NETZLEY, APPELLANT, *v.* NATIONWIDE MUT. INS. CO., APPELLEE.

(No. 3614—Decided August 5, 1971.)

*Messrs. Baggott, Logan & Gianuglou,* for appellant.
*Messrs. Altick, McDaniel & Radabaugh,* for appellee.

HOLMES, J. This matter involves the appeal of a jury verdict and judgment thereon for the defendant, the appellee herein, in an action brought by the plaintiff, the appellant, in the Court of Common Pleas of Montgomery County in which damages were awarded in the amount of $55,000 for the alleged failure of the defendant to properly negotiate a settlement in a prior automobile damage action which had resulted in a deficiency judgment of like amount against the plaintiff.

The basic operative facts surrounding this case are as follows:

On August 12, 1963, Mr. Netzley, while operating his automobile in Montgomery County, Ohio, was involved in an automobile accident in which one Ralph Birkhead was

killed. At the time, Mr. Netzley had a policy of casualty insurance upon his automobile with the Nationwide Insurance Company, which policy had a maximum limitation coverage of $20,000.

The plaintiff's third amended petition alleges that the plaintiff promptly notified Nationwide of the accident, and "that the defendant did, or had the opportunity to, make a reasonably prompt investigation of the facts and circumstances surrounding said collision."

The petition further alleges that on June 16, 1965, a suit was filed in Montgomery County against plaintiff by the executrix of the estate of Ralph Birkhead alleging that the collision, and resulting death of Mr. Birkhead, was the result of the negligence of Mr. Netzley, and praying for $125,000 damages.

It appears that Mr. Netzley had been informed that counsel for Nationwide would represent the company and also would represent Mr. Netzley in so far as the limit of the liability under the policy, but that he had the right to obtain personal counsel to protect himself against the claimed liability in excess of the policy limit. It appears that Mr. Netzley chose not to employ separate counsel and relied upon the Nationwide counsel to advise him and to represent him in that litigation.

Plaintiff further alleged in his petition that the attorneys for the executrix of Ralph Birkhead's estate made an offer to settle the suit for $25,000, but such offer of settlement was never communicated to the plaintiff either by Nationwide or by its counsel.

Further, the plaintiff alleged that there were no attempts by the defendants, its agents or its attorneys, to negotiate or compromise this claim until the morning of the trial when trial counsel representing the plaintiff and Nationwide made an offer to settle for $7,500 which sum was refused by counsel for the executrix of the estate. Plaintiff alleged that neither the fact of the offer, nor the refusal was communicated to the plaintiff by Nationwide or by counsel.

The plaintiff also alleged that the defendant's agent

and attorney would not permit the plaintiff to inform him of the policy limits of the plaintiff's insurance.

The trial of the prior negligence action resulted in a jury verdict in favor of the executrix of the estate of Ralph Birkhead, deceased, in the amount of $75,000 of which amount Nationwide paid the sum of $20,000, the limit of liability under the policy. The plaintiff paid the amount of $8,407.34 upon the excess judgment.

Further, plaintiff alleged that at all times from the date of the accident and up to the time of judgment against him, he was willing to contribute his own money, together with the money available under the insurance policy in an effort to settle the claim against him.

The first defense in the defendant's answer denied that Nationwide's counsel had refused to permit Mr. Netzley to tell counsel the policy limits. Further, by way of defense, Nationwide alleged that Mr. Netzley had told trial counsel that he was not responsible for causing the collision.

The defendant, Nationwide, admitted in its answer that Mr. Netzley had not been informed of the offer made by counsel for the executrix to settle the matter for $25,000. Also, the defendant Nationwide admitted that Mr. Netzley had not been informed of its counter offer of $7,500 on the morning of trial.

The defendant then set forth an affirmative defense by alleging that an agreement had been entered into by which the estate of Ralph Birkhead had released Mr. Netzley from liability for the unpaid judgment.

The plaintiff, Mr. Netzley, replied to the latter affirmative defense to the effect that he had not entered into an agreement with the estate of Ralph Birkhead which had released him personally from liability.

Prior to the trial of this matter, during a deposition of Mr. Glenn Barr, the claims attorney for Nationwide, the plaintiff's counsel asked for a copy of a certain letter written by the defense counsel for Nationwide and Mr. Netzley in a previous negligence action. The claims attorney denied such request on the basis that the letter was

privileged under the attorney-client relationship rule. Subsequently, plaintiff's counsel made a demand for an inspection of the letter upon counsel for Nationwide but such was refused.

A pretrial motion for the production of such letter was denied by the court, was renewed by counsel at the time of trial, and again denied by the trial judge, who, in his ruling denying such motion, stated that the letter, or its contents were not to be before the jury in any way.

A proffer of such letter was made and marked plaintiff's Exhibit No. 3 for purposes of identification.

An observation of the proffered letter shows it to be a letter from the trial counsel for Nationwide and for Mr. Netzley to the regional claims attorney for Nationwide. It was dated February 14, 1967.

In the letter, counsel, after setting forth the basic facts of the case and the pertinent information adduced in a deposition of the widow of the deceased, analyzed the potential liability of Nationwide, and Mr. Netzley, as follows:

"All in all, we think the chances are small, maybe 20% of successfully defending this case. In view of this, and considering the decedent's beneficiaries, particularly the two minor children, who were seven and ten years of age at the time of his death, we feel that this case has a settlement value at this time of about $18,000.00. The case is set for trial and will very probably go forward the week of March 27. We would appreciate your early instructions and such settlement authorization as you may give us, in order that we may have sufficient time before trial date to further explore settlement possibilities."

In the review of the intricate questions of law as presented by the plaintiff's various assignments of error, we believe such questions may be more appropriately and effectively dealt with if we are not confined to the order or sequence in which the plaintiff has set forth such assignments of error.

Plaintiff's fourth and fifth assignments of error go to the heart of the basic question presented to this court: i. e.,

what is the duty of Nationwide, a liability insurer, to negotiate, settle, compromise and advise its insured where there has been a negligence action brought against the insured and the petition prays for an amount which exceeds the limits of the insurance policy?

Consideration was given to such question by an American Law Reports annotation entitled "Duty of liability insurer to settle or compromise," contained in 40 A. L. R. 2d 168.

Discussing the duty of a liability insurer as it relates to an offer of settlement for a figure within, but closely approaching the limits of the policy, the annotation states as follows, at page 170:

" * * * [T]he vast majority of the courts have held, and it is probably the accepted rule in all jurisdictions at this time, that the insurer is bound to give some consideration to the insured's interest in such a situation, and the pronounced split in the decisions involves the question whether the insurer's obligation is only to act in 'good faith' to the insured in considering such an offer, or whether it is required to exercise 'due care' and is liable for a negligent rejection of the compromise."

But merely stating that a given jurisdiction follows the "good faith" rule or the "due care" rule is only setting forth the initial phase of the query. The further problem is stated thusly in the annotation, at page 171:

"While the cases may be conveniently arranged according to whether they purport to apply the 'good-faith test' or the 'negligence test,' with the great majority of the courts grouped under the former rule, the resulting neatness is highly illusory, since the decisions agreeing that the insurer must exercise good faith toward the insured are in anything but agreement as to just what degree of consideration for the insured's interest is involved in the 'good-faith' concept."

In reviewing the Ohio cases related to this subject, we believe there can be no great difference of opinion that this state follows the "good faith" rule. The annotation

so recognizes the Ohio cases in this category and cites the following:

*Hart* v. *Republic Mut. Ins. Co.* (1949), 152 Ohio St. 185; *The Cleveland Wire Spring Co.* v. *General A. F. & L. Assur. Corp.* (1917), 6 Ohio App. 344; and *J. Spang Baking Co.* v. *Trinity Universal Ins. Co.* (1946), 45 Ohio Law Abs. 577.

However, knowing that "good faith" is the acceptable standard in resolving this type of matter does not in and of itself solve the problem, because there is the further question to be answered as to what constitutes good faith or, conversely, what action, or inaction, on the part of the insurer would constitute bad faith.

The A. L. R. annotation referred to, in speaking of the various tests formulated by courts throughout the country, states at page 181:

"Some of the courts have indicated that, in the absence of actual fraud or misrepresentation the insurer is entitled to regard its own interest as paramount, others have said that the insured's interest must be given equal consideration, while at least one court has said that in the event of a conflict of interest the insured's interest must be given priority."

In a review of the Ohio cases, we find the following to be the transition and development of the pertinent law to be applied to the instant case.

The court, in *The Cleveland Wire Spring Co.* case said, at 352, that the "good faith" test permits the insurer to consult its own interests in making settlements, so long as it does not abuse its power and recklessly and contumaciously refuse to settle.

In *Hart* v. *Republc Mut. Ins. Co., supra,* the court expressly rejected the negligence test, but noting the insurer's contention that it acted in good faith in rejecting the compromise because it thought there was no liability to the injured party, said that such a belief may not be arbitrary or capricious, but the conduct of the insurer must be based on circumstances furnishing "reasonable justification" for such a belief.

In 1962, the Ohio Supreme Court decided the most recent of the leading cases in this field. The first two paragraphs of the syllabus of *Slater* v. *Motorists Mut. Ins. Co.* (1962), 174 Ohio St. 148, set forth the current pertinent Ohio law:

"1. In an action by an insured against his insurer to recover the amount of a judgment rendered against him in a tort action in excess of the policy limit, such insured must allege and prove a lack of good faith on the part of the insurer either in negotiations respecting a settlement of the claim against the insured or in the conduct of the trial of the tort action on behalf of the insured.

"2. A lack of good faith is the equivalent of bad faith, and bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

In *Slater,* there had been an offer by claimant's counsel to settle for the policy limit if such limit was officially disclosed by the insurer. The policy limit of $5,000 was not officially disclosed to claimant's counsel, but the attorney for the insurer suggested that such was the limit of the policy and offered that amount in settlement of the claim. The claimant refused in that there had been no official pronouncement of the policy limit.

The court first stated that a liability insurer, collecting a premium for the policy issued, owes a duty of protection and good faith to its insured in accordance with the terms of the policy. Then, after reviewing the facts of that particular case, the court came to a conclusion, stated as follows at page 152 of the opinion:

"Although in the circumstances of this particular case it may have been arbitrary and a display of poor judgment by the insurer not to disclose officially the limit of liability under the policy held by Slater, we think all factors considered its failure to do so falls short of bad faith as a matter of law. By the information coming to him from two

sources, counsel for Duff [the claimant] could not reasonably have doubted that the maximum limit of liability under the policy was $5,000. Furthermore, he was offered that amount before trial."

Judge Zimmerman pointed out in Slater that the liability insurer owes a duty of protection and good faith to its insured in accordance with the terms of the policy.

In the liability policy purchased by Mr. Netzley, we find, under the general heading of "Insuring Agreements," the following:

"V. Supplementary payments, defense, settlement

"(2) As respects the insurance afforded under Coverages C(1), C(2) and E(1), the Company shall:

"(a) defend with counsel of its choice any suit against a person entitled to protection alleging such injury, sickness, disease or destruction and seeking damages on account thereof. Such suit shall be defended even if groundless, false or fraudulent. The Company may make any investigation, negotiation, and settlement of any claim or suit as it deems expedient."

This portion of the policy establishes the general duty of the defendant, Nationwide, to defend a negligence action as might be brought against Mr. Netzley, its insured. It also grants to Nationwide the right to make a settlement of any claim that it deems expedient. However, the law injects into this right of settlement the condition that such must be carried out in good faith.

Now, what are the inherent basic duties applicable to the proper defense of the litigation brought against its insured which would tend to support the insurer's claim that it acted in good faith in this regard?

First, we feel that the underlying requirement attendant to an exercise of good faith in the acts, conduct, and circumstances of the defense of an action, including the negotiation for settlement of the claim, is that the insurer in the consideration of the conflicting interests of both the insurer and the insured exert at least an equal degree of attention and concern for the interests of the insured as it would for its own interests in the matter.

Such standard of duty would not require the insurer to place the interests of the insured on a paramount position above its own, but only on an equal basis with it.

With this underlying general duty what specific acts, conduct, or circumstances might be considered on the issue of bad faith of the insurer?

Certainly, it is basic to the proper defense of any negligence action that there be appropriate conferences between trial counsel and client; there must be an appropriate investigation of the circumstances of the incident out of which the negligence claim arose, and this would include the acts of the persons involved as well as all of the physical facts present such as condition of highway, weather, traffic conditions, traffic controls, etc.

Further, it is basic, that with the facts and circumstances as disclosed by the investigation, an advisory opinion as to the applicable law must be made by the legal counsel involved. Also, there should be formulated by the insurer and its counsel a general determination as to the degree of liability, if any, of the insured, and such information should be conveyed to the insured.

Also, it is the duty of the insurer to fairly enter into negotiations looking to a settlement within the policy limits where there is reason to believe that the claim against their insured is a meritorious one, and where the reasonable expectation of successfully defending the action is negligible.

In addition, we hold to the view that an offer of settlement of the claim at, or near, the policy limits should be conveyed to the insured—this for the purpose of giving the insured the opportunity to engage in the discussion of a settlement, and to make appropriate offers of contribution toward settlement.

We feel that these are some of the basic elements involved in the negotiation, settlement and defense of a claim. From them we may draw forth and resolve some of the particular acts, conduct, or circumstances which may be indicative of bad faith in the defense of such a claim.

In a given case, it may be indicative of bad faith that

the evidence as to liability and damages is overwhelmingly against the insured in the negligence action; that the insurer recognized the advisability of settlement, but attempted to get the insured to contribute thereto; that the insurance company refused to discuss the acceptability of a contribution on the part of the insured; that the insurer failed to properly investigate the claim so as to be able to intelligently assess all of the probabilities of the case; that the insurer rejected the advice of its attorneys and, or, agents urging a settlement; that the insured received a compromise offer within or near the policy limit, but failed to act in any fashion upon it; that after receiving a reasonable compromise offer of settlement, the insurer offered an unreasonably low settlement sum at the time of trial; and that the insurer failed to inform the insured of any such compromise offer.

The question of good faith is a fact issue for the jury, and as such all facts and circumstances reasonably applicable within the law to such issue should be before the jury.

Further, the jury for its edification should have a pronouncement by the court of all of the applicable law on the subject as it may deem necessary, or that might be requested by the parties.

Now, turning to the specific special instructions as requested by the plaintiff and denied by the court, we hold that it was not prejudicial error to refuse to give plaintiff's special instruction "A". Although we have previously indicated that we feel that the insurer should give equal attention to the interests of the insured with that of its own, we hold that the phraseology of the instruction does not encompass, as it should, a specific act of bad faith.

We find that the court did not commit prejudicial error in rejecting plaintiff's special instruction "D" in that such instruction uses the words diligence, intelligence, etc., connoting the applicability of the duty of "due care," rather than the rule of "good faith" which must be applied to this case.

We hold that the court also did not err in refusing to

allow plaintiff's special instruction "E". The insurer is not bound in this circumstance to act in a fiduciary relation to the insured.

However, special instruction "F" should have been given by the trial court. That instruction is as follows:

"If you find by a preponderance of the evidence that the defendant, Nationwide Mutual Insurance Company, after receiving the settlement demand of $25,000 from the Estate of Ralph Birkhead wilfully failed to make any attempt to engage Birkhead's counsel in discussions seeking a reduction in the initial settlement demand, you may then consider whether such failure, coupled with its failure to inform the insured of said demand for settlement, was motived by Nationwide's own self interest and did not consider equally the financial interest of Kenneth J. Netzley, you may then find that such failure was a breach of its duty of good faith and if you so find your verdict should be for the plaintiff."

We hold that this instruction embodies some of the elements included within the duties of the insurer during the defense of a negligence action. The showing of an offer of settlement, the absence of any reasonable negotiation of settlement following such an offer, and the failure of the insurer to inform the insured of such an offer all are matters going to the issue of the good faith of the insurer. Such matters, being relevant to the pertinent issue of the case, should have been permitted to go to the jury. Therefore, we hold that an instruction pertaining to the law applicable to such facts was in order, and the refusal to permit such was prejudicial error.

We hold that it would not be prejudicial error to give the defendant's special instructions 2 and 3, if in the process of considering such instructions the jury had had before it the plaintiff's special instruction "F".

The phraseology of both of the defendant's special instructions 2 and 3 are basically that of the syllabus of *Slater* v. *Motorists Mut. Ins. Co., supra,* which has been considered and applied here. However, we feel that one portion of paragraph two of the syllabus of *Slater* is par-

ticularly applicable and should be applied to the facts in this case, but with the added light as would have been provided the jury by the plaintiff's special instruction "F".

The applicable portion of paragraph two of the syllabus of *Slater* states that "bad faith * * * imports * * * [a] breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Whether there was a breach of a known duty of defending the negligence action, and whether, if there be such a breach, it was occasioned by some ulterior motive of the insurer partaking of the nature of fraud, were questions for the jury and to be considered in the light of the facts of the offer, degree of negotiation for settlement, amount of investigation of the circumstances surrounding the accident, advice of counsel relating to the probabilities of the case, and the information, or absence of it, as conveyed to the insured.

The plaintiff urges upon this court, in his first assignment of error, the proposition that the trial court erred in overruling his motion to require the defendant to produce the letter of trial counsel which had been sent to Nationwide.

The argument presented, within the framework of this assignment of error, could also encompass the claim that the trial court erred in excluding such letter from the evidence to be placed before the jury.

The main argument presented in support of this first assignment of error is to the effect that the letter in question was between an attorney and his client (Nationwide) and as such would normally be privileged by law pursuant to R. C. 2317.02, but, under the facts in this case, the privilege would not apply because the counsel for Nationwide was also contemporaneously representing the plaintiff who was the insured defendant.

This is a very intriguing proposition, and one concerning which there is a sparsity of case law. We do note, however, that the Court of Appeals for Medina County considered a comparatively similar question of privileged communications in the case of *Emley, Exr.,* v. *Selepchak* (1945), 76 Ohio App. 257. Such case involved an action on

a contract between two clients of an attorney who had drafted the contract.

Paragraph three of the syllabus states: "When the same attorney acts for two parties who desire to enter into a contract, and the parties together communicate with him in respect thereto, such communications are not privileged in a controversy between the two parties, between their personal representatives, or between one of the parties and the devisees of the other, in an action in specific performance to enforce the contract which had been consummated between the parties in the presence of and with the advice of the attorney."

The court, after setting forth the section of Ohio law pertaining to privileged communications, quoted Wigmore on Evidence as to one of the exceptions to the general rule of privilege as follows: " 'Another exception * * * is when the same attorney acts for two parties having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other * * *.' VIII Wigmore on Evidence (3 Ed.), Section 2312." To the like effect, see *Chitty* v. *State Farm Mut. Auto Ins. Co.* (1964), 36 F. R. D. 37, and *Henke* v. *Iowa Home Mut. Cas Co.*, 249 Iowa 614, 87 N. W. 2d 920.

We believe this to be good law and applicable to the facts in this case even though its application would be to an action in tort rather than one in contract.

Here, by the terms of the liability insurance policy, Nationwide was obligated to defend with counsel of its choice any damage action brought against the insured Mr. Netzley, which action sought damages for personal injury or destruction of property.

Nationwide informed Mr. Netzley that he could obtain additional counsel to represent him, but he did not choose to do so but, rather, relied upon legal counsel for Nationwide to protect his interests. In furtherance of such

attorney-client relationship, it appears from the record that Mr. Netzley had several conferences with counsel, attended a deposition with counsel, and reviewed the scene of the accident with counsel.

I do not believe that it can be effectively argued that trial counsel for Nationwide was only incidentally legal counsel for the insured. Even though Nationwide may have only been specifically interested in the law suit to the extent of its liability under the contract of insurance, the legal counsel retained by Nationwide was, or should have been, interested in the handling and trial of the cause in its totality.

We hold that both Nationwide as well as Mr. Netzley, its insured, were clients of the legal counsel retained by Nationwide. Further, we hold that both clients had a mutuality of interest in all of the affairs related to such cause of action, and both were equally entitled to any and all information, analysis, aid, or advice relating to such matter.

There being such a degree of common interest in any information or legal advice concerning such negligence action, a demand for any such communications by one of the parties upon another in a subsequent action between the parties should have been supported and approved by the trial court.

Further, the trial court should have permitted the introduction of the letter as evidence on the issue of whether or not there was bad faith on the part of Nationwide in its handling of the negotiations for settlement of the negligence action against Mr. Netzley.

The plaintiff claimed that Nationwide had all of the information concerning the accident, and the opportunity to analyze Mr. Netzley's liability. Also, that Nationwide had the benefit of the advice of counsel concerning the legal aspects of the case as well as the potential for successfully defending the action.

Further, Mr. Netzley claims that in light of the fact that neither the $25,000 offer of settlement, nor the fact that the insurer had made a counter offer of only $7,500 on

the morning of the trial had ever been communicated to him, defendant's activities, or inaction, constituted bad faith.

The contents of the letter from legal counsel to Nationwide would have been proper evidence for the consideration of the jury on the issue of bad faith, and it was prejudicial error for the trial court to have prohibited its use therefor.

As a second part of the first assignment of error, the plaintiff argues that the attorney-client privilege had been waived by Nationwide in that it had, as part of its case, called Nationwide's legal counsel to the stand for general testimony relative to his handling of the prior negligence action.

Plaintiff takes the position that the defendant, being a corporation, could only speak through its officers or agent, and when its legal counsel was called as a witness this was, in effect, the testimony of the defendant and, thereby, the privilege was waived.

We are constrained to hold that the trial counsel, within the facts of this case, is neither an officer of Nationwide, nor its general agent. The trial attorney, in this sense, is not the Nationwide Insurance Company. Therefore, his taking the stand on behalf of Nationwide does not constitute a party voluntarily testifying in his own behalf.

We hold that there was no waiver of the attorney-client privilege by virtue of the attorney having testified. *Spitzer* v. *Stillings* (1924), 109 Ohio St. 297, and *King* v. *Barrett* (1860), 11 Ohio St. 261, are not applicable to the facts in this case.

The plaintiff's second assignment of error is to the effect that the trial court erred in refusing to admit certain evidence which would, in plaintiff's view, show the clear liability of Mr. Netzley in the prior negligence action.

The plaintiff had offered the testimony of Sgt. Larry Good, the investigating officer of the accident, and also had offered the complete accident report as compiled by the sheriff's department.

The trial court restricted both the testimony of Sgt.

Good as to the contents of the reports, and refused to request that the reports be introduced as exhibits.

The court was not in error in refusing to admit all of the reports of the accident as exhibits, but we feel that the testimony of the officer concerning the nature of the reports and their contents, if properly identified, should have been permitted.

We believe that in order for the jury to make a determination of the good faith of the insurance company in refusing to settle the negligence action, it is necessary for the jury to know what facts were in that case bearing on the defendant's liability.

As stated in the annotation at 40 A. L. R. 2d 196, section 10:

"Since the likelihood of success or failure of the injured claimant in his action against the insured, and the former's ability to prove damages in an amount exceeding the policy coverage (or the compromise figure offered), are the primary considerations in determining whether an offer of settlement should be accepted or rejected, it is apparent that the weight of the evidence against the insured on the issues of damages and liability is relevant in determining whether the insurer should have compromised. Accordingly, it has frequently been recognized that the fact that the claimant had a very strong case against the insured on both these issues has some tendency to show that the insurer's rejection of the offer was in bad faith."

The plaintiff's third assignment of error relates to rulings of the trial court which excluded certain evidence and testimony, which this plaintiff felt were pertinent to the issue of the good faith of the insurance company in failing to negotiate a settlement of the claim against the insured.

We shall touch, briefly, upon the excluded testimony.

We feel that the trial court unduly limited the examination of Mrs. Helmick, the executrix of the estate of Ralph Birkhead. The court excluded a number of questions on the basis that such questions could be answered "yes"

or "no," and as such were leading questions. We do not believe that this is the correct criteria for determining leading questions. Also, all of the questions were not within the category of being leading.

Further, questions relative to settlement offers made to the executrix by Nationwide Insurance Company were improperly excluded by the trial court. Proper questions framed around the general query as to what, if any, negotiations for settlement had taken place were in order relative to the issue of the bad faith of the insurance company.

(B) The questions directed to Mr. Showatter who had been a witness to the automobile accident, out of which the original negligence action arose, were in the main directed toward establishing the atmospheric condition at the time of the accident—more particularly that there had been fog at such time and place.

We hold that the exclusion of such testimony was not prejudicial error, if error at all. The atmospheric conditions, adverse or otherwise, and the issue as to whether the counsel and agents of Nationwide had properly investigated and considered such conditions should have come into evidence by way of appropriate exhibits and testimony of the official investigating authorities or other appropriate public officials.

(C) There was no prejudicial error in the exclusion of the testimony of Mr. Netzley relative to whether trial counsel had discussed the legal import of Mr. Netzley's statement "that he had not seen the deceased's automobile, immediately prior to the impact."

(D) The refusal of the trial court to permit the plaintiff to use certain testimony of Mr. McDaniel, trial counsel for Nationwide and for this plaintiff in the negligence action, for purposes of impeachment, was not error.

The contended basis for impeachment is that Mr. McDaniel stated on direct examination that he had informed Mr. Netzley of the $25,000 offer of settlement, whereas the answer of Nationwide which had been allegedly prepared by Mr. McDaniel had admitted that Mr. Netzley had not been so informed.

This matter may be disposed of by pointing to the record which shows that Mr. McDaniel testified that there had been two answers filed in the negligence action, and that the answer pursuant to which the case went to trial had not been prepared by him.

(E) The further questions propounded to Mr. McDaniel relative to his investigation and analysis of the automobile accident should have been permitted by the trial court. All such questions would ultimately have a bearing as to the knowledge of counsel of the facts surrounding the accident, the degree of potential liability of the insured, the knowledge imputed to Nationwide, and the resultant duty to negotiate, or the element of bad faith in the absence of negotiation.

All of the conclusions set forth within this decision are supported by one of two bases: the contract of insurance calls for the directing of some degree of attention and concern toward an insured who has paid his premiums for his policy, and the developed law regarding the duty of an insurer to its insured requires the result reached here under the facts of this case.

This general proposition has been well stated in the text of 1 Long, the Law of Liability Insurance, Section 5.14:

"The rights of the insured go deeper than the mere surface of the contract written by the insurer; implied obligations are imposed based upon those principles of fair dealing which enter into every contract. The insurer must accord the interest of the insured the same fair consideration it gives its own interest. The insurer is not obliged to submerge its own interest, but a decision to expose the insured to personal money loss must be grounded upon an honest belief by the insurer that the known facts and circumstances of the case indicate a reasonable possibility of a verdict for the insured or a verdict within the policy limits. The insurer has no unqualified right to risk the insured's financial well-being; the insurer's obligation of good faith demands that the chance of finding nonliability be real and substantial and that the decision to litigate be

honestly made." Citing *Brown* v. *U. S. Fid. & Guar. Co.*, 314 F. 2d 675.

Good faith or bad faith is a state of mind indicated by facts and circumstances as well as by direct evidence. Each case must be decided upon its particular facts.

The jury, in the trial of this matter, should have had all of the available basic facts bearing on the question of good faith before it. The trial court, having excluded what we believe to be some of those basic facts, committed prejudicial error.

Accordingly, we hereby reverse the judgment of the Common Pleas Court of Montgomery County and remand this matter for a new trial to be conducted in accordance with the pronouncements of this decision.

*Judgment reversed and cause remanded.*

SHERER, P. J., and CRAWFORD, J., concur.