Teresa **SIMPSON**, Administratrix of the Estate of Raymond K. Simpson, Deceased, et al., Plaintiffs-Appellees,

v.

**MOTORISTS MUTUAL INSURANCE COMPANY**, Defendant-Appellant.

No. 72–1702.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1973.

Decided March 27, 1974.

As Amended on Denial of Rehearing May 29, 1974.

Pell, Circuit Judge, concurred and filed opinion.

20. See Fn. 15, *supra.*

Emerson Boyd, Indianapolis, Ind., for defendant-appellant.

Earl C. Townsend, Jr., John F. Townsend, Jr., Indianapolis, Ind., for plaintiffs-appellees.

Before PELL and SPRECHER, Circuit Judges, and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior District Judge.

Plaintiffs' decedent was killed in an automobile accident caused by the negligence of Thomas Penman, Jr., who was driving a vehicle owned by Sylvester Griffin. Griffin was insured by the defendant Motorists Mutual Insurance Company. In a prior negligence action, the plaintiff sued Penman and Griffin for wrongful death, and the court there entered a judgment in favor of the plaintiff and against Penman in the amount of $210,000.00.[1] Motorists Mutual provided Penman a defense to the prior cause of action, but at all times denied coverage to him under the policy. Following the conclusion of the prior action, Penman assigned his rights under the policy to the plaintiff herein and this suit was commenced.

The plaintiffs' complaint is stated in two counts, the first alleging that Pen-

---

1. The cause against the defendant Griffin resulted in a judgment in his favor.

man was an insured under Motorists Mutual's policy of insurance which provided $10,000.00 of coverage, and the second charging that Motorists Mutual acted in bad faith in refusing to pay its $10,000.00 policy limit in settlement of the plaintiffs' wrongful death claim against Penman. Under count 1 of the complaint, the plaintiff sought the $10,000.00 policy coverage, plus interest on the entire $210,000.00 tort judgment, and sought the balance of the tort judgment in count 2. The jury returned a verdict in favor of the plaintiff on both counts, awarding her the $10,000.00 policy coverage, plus interest of $59,386.84 on the full tort judgment, under count 1, and under count 2 awarded the plaintiff the balance of the tort judgment, amounting to $200,000.00. The defendant appeals from that verdict and the subsequent judgment entered thereon.

Under the terms of the insurance policy, coverage was extended to the named insured, Sylvester Griffin, and within the definition of "first-named insured" any relative of either the insured or his spouse while such relative was a resident of the insured's household. The policy also covered any person using the insured's automobile provided such use was by or with the permission of the named insured.

The coverage issues in count 1 of the complaint were tried on the alternative theories that Penman was either a relative residing in the household of the named insured or was a permissive user. The bad faith issue stated in count 2 of the complaint was tried on several factual theories, including that the defendant had abused Penman's position in the prior tort action in order to obtain admissions from him relative to the coverage questions, had failed to communicate properly to Penman the settlement offer in the tort case, and had refused to disclose to Penman the policy limits or the coverage provisions of the policy.

While the defendant raises numerous issues on appeal, the principal thrust of its position is directed toward the suffi-

ciency of the evidence to support the jury's verdict. In this regard, error is assigned to the district judge's denial of the defendant's motion for a directed verdict at the close of all of the evidence, and the defendant's post-trial motion for judgment notwithstanding the verdict. Viewed in its light most favorable to plaintiff, we conclude that the evidence contained more than ample support for the jury's verdict.

The record shows that in July of 1965, Penman was discharged from the Navy after ten years of service. At the time of his discharge, he had been stationed in Chicago. He then returned to Cincinnati, bringing all of his personal effects with him. Upon arriving in Cincinnati, he visited briefly with his mother in her Cincinnati apartment. On that occasion, Penman's sister, Mrs. Sylvester Griffin, invited him to take up residence with her and her husband and child at their home in Cincinnati. Penman stored his Navy clothing in one of his mother's empty rooms, and went to the Griffin household where he lived with them for a period of approximately two weeks. While living with the Griffins, Penman slept in the Griffin household, took his meals there with the family, and kept all of his civilian clothing at the Griffin household.

After approximately two weeks, Penman went back to Chicago for several weeks, returning to the Griffin household on September 27, 1965. His plans for the future were uncertain at that time, and he discussed with the Griffins the possibility of re-enlisting in the Service. He stayed with the Griffins until the evening of October 1, 1965. On that evening, Penman asked Griffin if he could use his car, and Griffin willingly gave Penman his permission. Penman did not state the purpose for which he intended to use the car, nor did Griffin place any limitation on its use.

On the evening of October 1st, Penman and a woman named Ann Berry apparently spent the evening and part of the next day's early morning hours in a

Cincinnati restaurant and lounge. Penman then took the woman home and drove to his mother's house where he awakened his sister, Jewel Green, and in the early morning of October 2, 1965, they left Cincinnati in Griffin's automobile and drove toward Chicago. Penman stated that his purpose in going to Chicago was to re-enlist in the Navy. The accident resulting in the death of plaintiffs' decedent occurred in Benton County, Indiana, as Penman and his sister were traveling towards Chicago.

Penman was hospitalized for a period of time after the accident, and upon his discharge from the hospital he returned to the Griffin household. Sylvester Griffin never raised any question concerning Penman's use of the automobile. Also, when Griffin filed his proof of claim with Motorists Mutual on October 4, 1965, the Monday following the accident, he listed Penman's residence as the Griffin household.

■ This evidence strongly supports the jury's verdict on the coverage questions. The jury was adequately instructed on the legal significance of the terms residence and permission. Under the set of facts outlined above, the jury could easily have concluded that Penman was either a permissive user or a relative of the insured residing in his household, or both.

■ With respect to the bad faith count, we feel that the evidence is equally compelling in the plaintiffs' favor. Concerning the liability of an insurer in this situation, we wish to note our agreement with the defendant that it is the law of Ohio, rather than Indiana as urged by the plaintiff, which governs the scope of the defendant's liability in this case. The contract of insurance here, entered into in the State of Ohio, provided coverage to an Ohio resident for a vehicle registered in Ohio. Moreover, the conduct giving rise to the permission to use the vehicle and to Penman's residency occurred in Ohio. Only the underlying tort occurred outside of Ohio.

■■ The decisions of the Supreme Court of Ohio provide that in order for an insured to recover the amount of a judgment rendered against him in a tort action in excess of the policy limit, the insured must prove a lack of good faith on the part of the insurer either in negotiations respecting a settlement of the claim against the insured or in the conduct of the trial of the tort action on behalf of the insured. Wasserman v. Buckeye Union Casualty Co., 32 Ohio St. 2d 69, 290 N.E.2d 837 (1972); Slater v. Motorists Mutual Insurance Co., 174 Ohio St. 148, 187 N.E.2d 45 (1962); Hart v. Republic Mutual Insurance Co., 152 Ohio St. 185, 87 N.E.2d 347 (1949). While acknowledging that "bad faith" is a term not susceptible to concrete definition, the Ohio courts have indicated that it embraces more than negligence, and imports a dishonest purpose or conscious wrongdoing. Wasserman v. Buckeye Union Casualty Co., 32 Ohio St.2d 69, 290 N.E.2d 837, 840 (1972). We have examined the district judge's instructions on the issue of bad faith and find them to be in conformity with the Ohio courts' definition of the term. While the defendant complains that the district judge refused its tendered instruction, which was approved by the Supreme Court of Ohio in *Wasserman,* we find no error in the district court's charge to the jury since it incorporated the principal elements of bad faith as viewed by the Ohio courts.

The evidence of bad faith in this record is particularly strong. The defendant knew certainly after the accident that it resulted from Penman's negligence and that the damage, involving the death of a 37 year old man who left a wife and three dependent children surviving him, substantially exceeded the ten thousand dollar policy limit. As stated, Sylvester Griffin filed a proof of claim with the defendant the Monday following the accident and listed Penman's address as his household on the claim form. That same day, one of the defendant's representatives instructed an Indiana adjuster for the company to vis-

it Penman in his hospital room and to obtain a statement from him relative to his use of the vehicle and his legal residence. The adjuster had prepared a statement inserting the declaration that Penman resided with his mother. Penman signed the statement, but the adjuster was unable to validate it with clearance from hospital authorities since Penman was under the influence of drugs at the time his signature was obtained.

Other evidence shows that although the defendant recognized Penman's liability from the outset, it attempted to avoid any payment on its part on the basis of a policy defense. Penman was advised by the attorneys retained by Motorists Mutual that the defendant would provide a defense to him, that the suit was for an amount in excess of policy limits, that Penman was free to retain his own counsel, but that in any event Motorists Mutual denied coverage under the policy. Penman was never informed by the defendant of the specific policy limits.

Moreover, although the plaintiffs offered to settle the tort action for the policy limits, the attorneys retained by defendant rejected the policy limit offer and refused to make any payment in settlement of the claim. This was done without even consulting Penman or inviting him to participate in the negotiations in any respect. To be sure, Penman was advised of the offer and rejection, but since he had not been advised of the amount of the policy limits, or of his right to independently negotiate with plaintiff and her attorneys, he was effectively denied any opportunity to independently settle the tort litigation within the terms of the offer of settlement made by plaintiffs' attorneys.

Additionally, although Penman was advised that coverage was being denied, the sole basis of the denial was that he did not have permission to use Griffin's automobile at the time of the accident. Penman was never advised by defendant or the attorneys retained by defendant to provide Penman's defense that the in-

surance policy extended coverage to relatives of the insured while those relatives were residents of the insured's household.

We think this record resoundingly supports the jury's verdict. The defendant knew that Penman's liability was clear and that the damages were far in excess of the policy limits. Moreover, in an attempt to support its contention that Penman's use of the automobile was beyond the scope of the permission granted by the owner, defendant's representative attempted to procure from an injured and sedated Penman information which would favor only the defendant's interests. In addition, the attorneys retained by defendant to "represent" Penman, by withholding critical information from him, deprived him of any opportunity to effectuate a reasonable settlement of the tort litigation. Bad faith, encompassing a dishonest purpose or a conscious wrongdoing, is forcefully demonstrated by this record.

■■ The defendant also contends that certain evidence was improperly excluded from the jury's consideration. This evidence consists of certain proceedings in a prior declaratory judgment action initiated by the defendant on this same policy and pertaining to the identical coverage questions. The evidence included the findings of fact and conclusions of law entered by District Judge Eschbach in the prior declaratory action which had been filed in the district court for the Northern District of Indiana. Judge Eschbach had determined that there was no coverage of Penman on the policy in question. However, this court, upon concluding that the requisite jurisdictional amount had not been met in the prior action, reversed the judgment of the district court and remanded with directions that the suit be dismissed. Motorists Mutual Insurance Company v. Simpson, 404 F.2d 511 (7th Cir. 1969). At this point, the district court's judgment in the declaratory action became a nullity and was hardly admissible in the instant case on the coverage issue. Moreover, the defendant was

permitted to show that it had commenced a declaratory judgment action on the coverage questions and had asked that action be advanced for speedy hearing. Defendant was further permitted to introduce the entire correspondence between itself and its attorneys with respect to the declaratory judgment action. Accordingly, we find no error in the evidentiary rulings on this point.

Error is also assigned to the admission into evidence of certain communications between the defendant and its attorneys in the tort action. In this respect, the defendant asserted the attorney-client privilege in an effort to preclude the introduction of such evidence by the plaintiffs herein. It should be remembered, however, that the plaintiff is suing here as the assignee of Thomas Penman. The defendant's attorneys were also the attorneys for Penman in the prior action. In this situation, the law of Ohio recognizes that where the same attorney represents two parties having a common interest, and each party communicates with the attorney, the communications are privileged from disclosure at the instance of a third person. Those communications are not privileged, however, in a subsequent controversy between the two original parties. See Netzley v. Nationwide Mutual Insurance Co., 34 Ohio App.2d 65, 296 N.E.2d 550, 561–562 (1971).

For the reasons stated, the judgment of the district court is affirmed.

Affirmed.

PELL, Circuit Judge, concurring.

On principles of justice and pursuant to guidelines established in the law of contracts, courts should scrutinize very closely cases such as the present one. The courts, it appears to me, should be extremely reluctant to provide an insured, who has only paid for a minimal amount of liability insurance, with what amounts to umbrella coverage.

I do concur in the majority opinion after close scrutiny because, if we accept, as we must, the evidence favorable to the appellee, the insured here did not get that for which he paid his premium. Included in that for which he paid was coverage for a permissive user and for a relative residing in his household. The jury could well have concluded on the evidence of this case that had the named insured been driving the vehicle at the time of the accident, the insurance company would have accepted with alacrity an offer of settlement within the policy limits. The named insured paid for equal coverage for a permissive user or for a relative residing in his household. The coverage was not afforded.