## O'Brien v. Tuttle

*Jerry I. Meyers,* for plaintiff.
*David R. Johnson,* for defendant.

WETTICK, *J.,* November 30, 1981—In this medical malpractice action, plaintiff seeks to compel production of a questionnaire concerning her treatment and care which plaintiff's treating physician, Alfred Tuttle, M.D., prepared at the request of his insurance carrier. Tuttle refuses to produce the questionnaire on the ground that it is protected against discovery by Pa.R.C.P. 4011(c) which bars discovery relating to a matter which is privileged.

The relevant facts, according to allegations of Tuttle, are that shortly after forwarding the complaint in this lawsuit to his insurance carrier, it sent a questionnaire regarding the claim to him; he completed the questionnaire but gave it to the attorney furnished by his insurance carrier to defend this lawsuit rather than returning the completed questionnaire to his insurance carrier; and this at-

torney later forwarded a copy of this questionnaire to the insurance carrier.[1]

Plaintiff contends that the questionnaire is not privileged for two reasons. First, the questionnaire was never protected by the attorney-client privilege, because the attorney to whom the report was furnished is the attorney for the insurance company not the insured. Second, if the communication was initially protected by the attorney-client privilege, Tuttle waived this privilege by his attorney's subsequent disclosure of the questionnaire to Tuttle's insurance carrier.

This court recently considered the scope of the attorney-client privilege in the context of an insurance situation in Piro v. Bell, 129 Pitts. L.J. 443 (1981). In Piro, plaintiff sought to discover a report which the treating physician completed and returned to his insurance carrier before he was represented by counsel or had ever been sued. Under these facts, we rejected the contention that the communication between the treating physician and his insurance carrier was protected by the attorney-client privilege because the communication was not between an attorney and his or her client, this being an essential prerequisite for the attorney-client privilege.

An issue left undecided in Piro was whether or not the attorney-client privilege protects an insured's communication to counsel retained by the insurance carrier to represent the insured which was disclosed subsequently by counsel to the insurer for purposes of permitting the insurer to evaluate the claim. This issue is now before this court.

---

1. This court's ruling is based upon these allegations. If plaintiff establishes that Tuttle's allegations are incorrect, this court will reconsider its ruling protecting the questionnaire from discovery.

The attorney-client privilege is presently codified in Section 5928 of the Judicial Code, 42 Pa.C.S.A. §5928, which provides: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

This privilege is limited to confidential communications made by a client to his or her attorney, and the privilege is ordinarily waived by the transmission of a communication to a third party. See Hopewell v. Adebimpe, 129 Pitts. L.J. 146 (1981), Piro v. Bell, supra, and the cases cited therein. Thus, if counsel is serving only the insurance carrier's interests, any communication between Tuttle and counsel is not a confidential communication by a client to his or her attorney: Piro v. Bell, supra. And if counsel is serving only Tuttle, the privilege may have been waived by counsel's furnishing a copy of the questionnaire to Tuttle's insurance carrier.[2]

However, if counsel is acting as counsel for both Tuttle and the insurance carrier, the communication is protected. The law recognizes a joint repre-

2. There is, however, some question about whether the privilege would be waived if the client had not authorized the communication because it is the client who is the holder of the privilege and only a client or his or her attorney, acting with the client's authority, may waive the privilege: McCormick on Evidence, §97. Also, if the disclosure was made to further the insured's interests in connection with counsel's preparation of the litigation (e.g. to encourage the insurance carrier to settle its claim), it can be argued that the disclosure does not constitute a waiver of the attorney-client privilege. See State v. Pratt, 284 Md. 516, 398 A. 2d 421 (1979); State v. Mingo, 77 N.J. 576, 392 A. 2d 590 (1978); Pouncy v. State, 353 So. 2d 640 (Fla. Dist. Ct. App., 1977).

sentation by a common attorney for the mutual benefit of two or more parties and thus, in this situation, extends the attorney-client privilege to any communication among the parties and their counsel in order to permit the free flow of information necessary to foster the open attorney-client dialogue essential for proper representation of the parties. In the insurance context, where a suit is brought by a third party against the insured, an anomalous relationship exists among the attorney, the insured, and the insurance company by virtue of the insurance contract. The standard insurance policy requires the insurance company to defend the insured, and in fulfillment of its contractual obligation to its insured, the insurer secures the attorney to represent defendant insured in the lawsuit. By virtue of its contractual duty to defend, control over the litigation rests in the insurance company. In addition, the standard cooperation provision of the policy requires the insured to disclose to the insurer the circumstances surrounding the claim. Because of this relationship between the insurer and the insured, the attorney selected by the insurer to represent the insured serves as counsel for both the insured and insurer. See Swedloff v. Philadelphia Transportation Co., 409 Pa. 382, 187 A. 2d 152 (1963); see also Netzley v. Nationwide Mutual Insurance Co., 34 Ohio App. 2d 65, 296 N.E. 2d 550 (1971); Dumas v. State Farm Mutual Automobile Insurance Co., 111 N.H. 43, 274 A. 2d 781 (1971) and cases cited therein. Consequently, so long as counsel in this case has been acting as counsel for both Tuttle and his insurance carrier throughout these proceedings, the questionnaire was protected by the attorney-client privilege at the time Tuttle gave it to counsel and counsel's furnishing this questionnaire to the insurer did not take the

communication outside the attorney-client privilege. See VIII Wigmore on Evidence, §2312, Privileged Communications to Insurers, 22 A.L.R. 2d 659.

Plaintiff contends that we should not characterize the relationship among counsel, the insured and the insurance carrier as a joint representation by a common attorney for the mutual benefit of both parties because to the extent that the interests of the insured and insurance carrier differ, counsel will furnish to the insurance carrier for use against the insured any prejudicial information which the insured provided. If plaintiff's portrayal of this relationship were accurate, the attorney-client privilege would not envelop this relationship among the insured, the carrier and counsel. For if counsel, once it becomes apparent that a conflict may exist, may secure information from the insured to defeat the insured's claim that he or she is entitled to coverage, we have not provided the protections necessary to foster the open attorney-client dialogue essential for the proper representation of a client. However, plaintiff's depiction of the relationship among the insured, the carrier and counsel is inaccurate because case law and the Code of Professional Responsibility impose upon counsel the duty to protect the insured's interests in this situation.

Because of the potential conflict of interest between the insurance carrier and the insured, counsel selected by the insurance carrier to represent the insured must assume a position of trust and confidence toward the insured. In Perkoski v. Wilson, 371 Pa. 553, 556-557, 92 A. 2d 189 (1952), the Supreme Court, in holding that an insurance carrier could not after the entry of final judgment against the insured deny liability for a substantial

portion of the judgment which was within the money limits of the policy, said:

"When the company voluntarily undertook the defense of Wilson, in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for an exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured such as later developed. It was accordingly incumbent upon the company to inform its policyholder of its prospective adverse interest with respect to the extent of its liability under the terms of the policy . . . Good conscience and fair dealing required that the company pursue a course that was not advantageous to itself while disadvantageous to its policyholder; and, not having so acted, the company was estopped thereafter to the extent of its liability to the insured on account of the judgment against him in favor of the husband plaintiff."

Also, in Cowden v. Aetna Casualty and Surety Co., 389 Pa. 459, 469-470, 134 A. 2d 223 (1957), which held that an insurance carrier would be liable for the entire amount of a judgment secured by a third party against the insured, regardless of any limitation in the policy, if the insurance carrier handled the claim in bad faith, the Supreme Court stated:

"While the contract is primarily one of indemnity, it operates at the same time to create an agency relationship in its provision for the insurer's exercise of control over the disposition of claims against the insured (within the policy's limits) whether that be by settlement of litigation. Thus, both parties have definite and separate interests in the disposition of such claims. And, where there is little or,

as in the instant case, no likelihood of a verdict or even a settlement within the limits of the policy's coverage, the separate interests of the parties are in effect substantially hostile. In such circumstances, it becomes all the more apparent that the insurer must act with the utmost good faith toward the insured in disposing of claims against the latter."

The relevant provisions of the Code of Professional Responsibility mandating this same result are D.R. 4-101(B)(2) which bars a lawyer from knowingly using a confidence or secret of a client to the disadvantage of the client and D.R. 5-105(B) which bars a lawyer from continuing multiple employment if the exercise of the lawyer's independent professional judgment on behalf of a client will be or is likely to be adversely affected by his or her representation of another client, or if it would be likely to involve the lawyer in representing differing interests. Also, see Ethical Consideration 4-5 which provides:

"A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure."

and Ethical Consideration 5-15 which provides:

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all

doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; . . ."

VIII Wigmore on Evidence, §2312(3), §312, also views the relationship of counsel to the insurance carrier and insured in the same fashion:

"A communication by A to X as A's attorney, X being then also the attorney of B, now become the party opponent, is ordinarily privileged because of the relation of X toward A. Nor does the fact of A's knowledge that X is already B's attorney, nor the fact of B's being already adversely interested destroy the privilege. This is so because, although X ought not to undertake to act for both in any matter where there is a possibility of adverse interests, nonetheless A is protected by reason of the relation."

Before reaching this result, this court considered the case law from other jurisdictions which has addressed the relationship among the parties to the insurance contract and counsel selected by the insurer. The principal issue in these cases was whether correspondence, reports, or communications among the parties and counsel was protected by the attorney-client privilege in subsequent litigation between the insured and the insurer. These courts either carved out exceptions to the attorney-client privilege where the insured and insurer's interests were in conflict or stated that the

attorney-client privilege does not protect communications among multiple clients and their counsel. See Brasseaux v. Girouard, 214 So. 2d 401 (La. 3rd Cir. Ct. 1968); Dumas, supra, and cases cited therein.

These holdings are not inconsistent with this court's conclusions as to the role of counsel vis-a-vis the insured to the extent that counsel's testimony concerned information acquired during the joint representation to promote the mutual benefit of the parties. But to the extent that these cases permitted counsel to obtain and turn over to the insurer information prejudicial to the insured once it was apparent that their interests differed, these cases cannot be reconciled with the obligations which Pennsylvania places on an attorney representing multiple clients to withhold employment once he or she discovers that the interests of the clients may actually differ.

In conclusion, because the relationship among counsel, the insurance carrier and the insured is a joint representation by a common attorney for the mutual benefit of the insured and insurance carrier, and because the attorney-client privilege protects any confidential communication between the parties through their common attorney, we deny plaintiff's request to compel production of the questionnaire which Tuttle prepared.

ORDER

On this November 30, 1981, it is hereby ordered that plaintiff's motion to compel defendant Alfred Tuttle to produce the written report referred to in his response to plaintiff's request for production of documents is denied.