OPINION
{¶ 1} Plaintiff, Douglas M. Mays, appeals from an order denying a motion to quash a subpoena for deposition testimony served on his attorney in this action, John Koverman, by Defendant, Thelma M. Dunaway.
 {¶ 2} Mays agreed to purchase farm land from Dunaway. The written contract of sale was contingent on rezoning the land for development. Mays retained Attorney Koverman to prosecute the rezoning application before the Board of Zoning Appeals ("BZA").
 {¶ 3} Because Dunaway owned the land, she needed to sign the consent for rezoning filed with the BZA. The application was denied. Mays then directed Attorney Koverman to file an R.C. Chapter 2506 appeal to the court of common pleas. Mays presented a verified complaint Attorney Koverman had prepared to Dunaway for her signature as owner of the land concerned. The complaint, signed by both Mays and Dunaway, was subsequently filed on their behalf by Attorney Koverman.
 {¶ 4} While the R.C. Chapter 2506 appeal was pending, Dunaway agreed to sell the land to other persons. Learning of this, Mays filed the underlying breach of contract action against Dunaway. In the course of that proceeding, Dunaway caused a Civ.R. 45 subpoena to be served on Attorney Koverman, seeking his deposition testimony pursuant to Civ.R.30(A).
 {¶ 5} Mays moved to quash the subpoena and for a protective order, asserting the attorney-client privilege. After a hearing on the motions, the trial court denied both, finding that Attorney Koverman's dual representation of both Mays and Dunaway in the rezoning proceedings barred Mays from asserting the privilege to prevent Attorney Koverman's deposition by Dunaway in the breach of contract action.
 {¶ 6} Mays filed a timely notice of appeal from the trial court's order.
 {¶ 7} ASSIGNMENT OF ERROR
 {¶ 8} "The court below erred when it held that attorney-Client privilege did not bar the defendant from obtaining testimony from appellant's lawyer."
 {¶ 9} Generally, discovery orders are interlocutory and therefore not final or appealable. State v. Port Clinton Fisheries (1984),12 Ohio St.3d 114. However, per R.C. 2505.02(A)(3), an order which grants or denies discovery of privileged matter is a provisional remedy which is final and appealable. R.C. 2505.02(B)(4).
 {¶ 10} It is undisputed that an attorney-client relationship existed between Mays and Attorney Koverman. The issue in this appeal is whether an attorney-client relationship also existed between Koverman and Dunaway. If so, the further issue is, when an attorney has represented two clients in the same matter, whether communications between either client and the attorney are protected by attorney-client privilege from discovery by the other in a subsequent action between them.
 {¶ 11} R.C. 2317.02(A) states: "The following persons shall not testify in certain respects: An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to the client." A client is defined for R.C. 2317.02 purposes, as "a person . . . that, directly or through any representative, consults an attorney for the purpose of retaining the attorney or securing legal advice from him in his professional capacity . . . and who communicates, either directly or through an agent . . . or other representative . . . with such attorney." R.C. 2317.021.
 {¶ 12} Mays argues that Attorney Koverman had no independent attorney-client relationship with Dunaway pursuant to the R.C. 2317.021
test. Mays argues that Dunaway's act of merely signing the complaint does not constitute either "consulting" Attorney Koverman to retain him as Dunaway's attorney or securing legal advice from him. Mays contends that Dunaway and Attorney Koverman never met or communicated, and that Dunaway was only nominally added to the zoning application and R.C. Chapter 2506 complaint to preclude any challenge to Mays' standing in the action commenced in the court of common pleas.
 {¶ 13} R.C. 2317.021 further states that "this section shall be construed as in addition to, not in limitation of, other laws affording protection to communications under the attorney-client privilege." Allowing for that, an attorney-client relationship may be created by implication based upon the conduct of the parties and the reasonable expectations of the person seeking representation. Cuyahoga Cty. BarAssn. v. Hardiman, (2003), 100 Ohio St.3d 260, 262, 2003-Ohio-5596.
 {¶ 14} Hardiman, an attorney met with a prospective client but told him that Hardiman wouldn't represent him as a defendant in a forcible detainer action without being paid a retainer. However, Hardiman subsequently acted without a retainer and helped the prospective client respond to interrogatories, and he sent and received mail from the opposing party on the prospective client's behalf. When neither Hardiman nor the prospective client appeared for trial, the court entered judgment against the prospective client. The Supreme Court found that Hardiman's conduct supported a reasonable belief on the part of both the prospective client and the opposing party that Hardiman was the prospective client's attorney, and held that Hardiman's conduct created an attorney-client relationship by implication. Id.
 {¶ 15} Although it pre-dates Hardiman by more than 20 years, the rationale of Netzley v. Nationwide Mut. Ins. Co. (1971),34 Ohio App.2d 65 supports the same conclusion. Netzley owned a casualty insurance policy issued by Nationwide. Netzley was involved in an accident, and Nationwide promised to provide counsel to represent his as well as its own interests up to the $20,000 limit of his policy. The opposing party made a settlement offer of $25,000 and Nationwide made a counter-offer of $7,500, neither of which were accepted or communicated by Nationwide's attorney to Netzley. A jury subsequently returned a verdict of $75,000 against Netzley. In a subsequent action for indemnification, Netzley sought a copy of a letter that had been drafted by counsel for Netzley and Nationwide in the negligence action. Two motions for production of the letter were denied.
 {¶ 16} We found that both Netzley and Nationwide were clients of the same attorney. We held that "it can [not] be effectively argued that trial counsel for Nationwide was only incidentally legal counsel for the insured. Even though Nationwide may have only been specifically interested in the law suit to the extent of its liability . . . the legal counsel retained by Nationwide was, or should have been, interested in the handling of the trial of the cause in its totality." Id. at 79.
 {¶ 17} The facts in Netzley differ from those in the present case in important respects. Netzley was told that Nationwide's attorney would represent his interests in the litigation if he elected to not retain his own counsel. Netzley had several conferences with Nationwide's attorney, attended a deposition with him, and reviewed the scene of the accident with him. All of those demonstrate actual communication and a promise of legal representation. In the present case there was neither direct communication nor a promise of representation. Nevertheless, on this record, we believe that an attorney-client relationship existed between Attorney Koverman and Dunaway.
 {¶ 18} "The determination of whether an attorney-client relationship was created turns largely on the reasonable belief of the prospective client." Hardiman, 100 Ohio St.3d at 262. Here, the trial court found that Dunaway was "more than along for the ride." Even though Mays initially retained Attorney Koverman, and he was specifically interested in representing Mays' interests, Attorney Koverman represented Dunaway's interest in selling the property as well. Her ability to complete the sale to Mays turned upon Mays' ability to rezone the property. She reasonably could expect Attorney Koverman to advance their joint interests before both the BZA and the court of common pleas.
 {¶ 19} Furthermore, Dunaway signed the consent for rezoning and the verified complaint that identified Attorney Koverman as her attorney. Although she never spoke with him, it is difficult to find that an attorney-client relationship could not exist when Attorney Koverman held himself out to the BZA and the court as the attorney representing both Dunaway's and Mays' interest in the action. Hardiman, supra.
 {¶ 20} We find that Attorney Koverman's acts in representing himself as acting in Dunaway's interests, as well as acting through Mays to have Dunaway sign the consent for re-zoning and verified complaint, had the capacity to create a reasonable belief in Dunaway's mind that he was her attorney, resulting in an attorney-client relationship between the two by implication.
 {¶ 21} Where there is a degree of common interest between joint clients in any communication, information, or other legal advice, the communication is not privileged in a future action between the two clients. Netzley. That common interest exception to the attorney-client privilege is limited to aid or advice pertaining to matters wherein both clients have a common interest. Therefore, the common interest exception to the attorney-client privilege applies to only those communications, advice or other information exchanged between Mays and Attorney Koverman in the prosecution of the rezoning proceedings before the BZA and the subsequent R.C. Chapter 2506 appeal. Attorney Koverman may be required to testify, but concerning only those matters.
 {¶ 22} The assignment of error is overruled.
 {¶ 23} The judgment of the trial court will be affirmed.
Wolff, J. and Fain, J., concur.