Kenneth M. ROMSTADT, Assignee
of Tracy Smith, Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
Defendant.

No. 3:92 CV 7677.

United States District Court,
N.D. Ohio, W.D.

Feb. 23, 1994.

George C. Rogers, Rogers, Godbey & Horner, Toledo, OH, for plaintiff.

John D. Willey, Jr., M. Donald Carmin, Eastman & Smith, Toledo, OH, for defendant.

### MEMORANDUM OPINION

DOWD, District Judge.

This case is before the Court on cross motions for summary judgment of plaintiff Kenneth M. Romstadt, as assignee for Tracy Smith, and defendant Allstate Insurance Company, and the numerous oppositions and replies of the parties. This Court's jurisdiction is pursuant to 28 U.S.C. § 1332.

### I. FACTUAL BACKGROUND

This is a bad faith insurance claim that arises out of an accident that occurred on December 20, 1989 at the intersection of

Dorr and Reynolds Roads in the City of Toledo. An automobile driven by Tracy Smith "rear-ended" an automobile driven by George Romstadt. Tracy Smith was insured by Allstate pursuant to a policy issued to her mother, Rose Chamblee. The police were not called, and Romstadt apparently told Smith that he was not injured. Smith's car was not damaged; Romstadt's repair bill in the amount of $143.00 was paid by Allstate. Liability is not disputed.

Subsequent to the accident, Romstadt complained of back pain. During the year after the accident, Romstadt underwent two disk surgeries.

On February 23, 1990, Allstate received a report from Romstadt's doctor, Dr. Johnson, which indicated that Romstadt had been in a previous accident in May of 1989. On June 4, 1990, Allstate received a report from Dr. Billings, and on June 8, 1990, Allstate received Dr. Vogel's records which, according to Allstate, documented a substantial history of treatment for back injuries since at least 1978. On July 20, 1990, Allstate received a medical report from Dr. Lawrence.

On August 11, 1990, Romstadt's counsel sent a letter to Allstate itemizing lost wages and medical expenses and indicating that a settlement demand would be forthcoming. On September 13, 1990, Allstate received a letter from Romstadt's counsel containing additional medical bills and a settlement demand of $96,000. Allstate rejected the offer in a September 25, 1990 letter from claims adjuster James J. Calhoun, stating that the reports establish a history of chronic back pain as well as a previous automobile accident in May of 1989. Based upon such information, Calhoun took the position that Romstadt's injuries are attributable to his preexisting condition and his more serious accident in May of 1989.

Allstate maintains that, on September 26, 1990, Calhoun spoke with Romstadt's counsel, and stated that Calhoun would need a medical opinion stating that all of Romstadt's medical treatment and surgery after December 20, 1989 were necessitated by injuries sustained in the December 20, 1989 accident.

On October 1, 1990, Calhoun received a letter from Romstadt's counsel offering to settle for Allstate's policy limits of $25,000, which offer would remain open until 4:30 p.m. on October 10, 1990. The letter stated that regardless of Romstadt's prior medical history, the aggravation of a preexisting condition is recoverable. The letter also stated that Romstadt would not again consider settlement at the policy limits.

On October 10, 1990, Calhoun wrote to Romstadt's counsel stating that no hospital records or medical reports were submitted to substantiate the claim that Romstadt's admission to the hospital and subsequent back surgery were the result of the December 20, 1989 accident, nor had a medical report of one of Romstadt's doctors been submitted. Further, Calhoun stated that the MRI scan taken in March of 1990 demonstrated that the bulging of the annulus at L5–S1 is associated with chronic osteophyte formation at that level. Thus, Calhoun rejected the settlement offer, and countered with a settlement offer of $2,000. It is undisputed that Allstate did not advise Smith of Romstadt's settlement offer of $25,000.

Romstadt and his wife then filed suit against Smith in Lucas County Common Pleas Court. Depositions were taken, and there were some settlement negotiations. On August 8, 1991, defense attorney Michael A. Bruno wrote to Allstate, stating that there had "been no expert medical testimony linking the [December 20, 1989] accident to the back conditions within reasonable medical certainty. The records are of no help either in this regard. Should plaintiff supply this necessary linkage, serious consideration will have to be given to a policy limits offer." Letter from Michael A. Bruno, Calhoun Deposition, Exhibit D, p. 75.

The case was set to go to trial on October 22, 1991 before Judge Knepper. On the day before trial, Romstadt's counsel provided a report from Dr. Lawrence in which Dr. Lawrence opined that Romstadt's injuries were somehow causally related to an accident. However, Allstate states that the date of the accident referred to by Dr. Lawrence was the May, 1989 accident, and that on one copy of that report someone had crossed out the

May date and written in the December date. Nonetheless, Allstate offered the policy limits of $25,000, but settlement was not achieved. The trial date was continued, and additional discovery regarding the medical reports of Dr. Lawrence was permitted.

At the time of the rescheduled trial, on February 3, 1992, Romstadt made an offer of settlement to defense counsel demanding that Smith enter into an agreed judgment entry for $125,000, and an assignment from Smith to Romstadt of all claims against Allstate, in exchange for the Romstadts filing a release and satisfaction of the judgment entered against Smith. Because of the conflict presented by the demand, Michael Bruno, the attorney retained by Allstate to defend Smith, advised Smith, Judge Knepper and Romstadt's counsel that he could not represent or advise Smith with regard to the offer of settlement. Supplemental Affidavit of Michael A. Bruno at 2. Judge Knepper of Common Pleas Court then appointed Jerome Phillips to act as independent counsel for Smith to advise her on her personal exposure and how to respond to the offer of settlement. Bruno states that he did not select Jerome Phillips to represent and advise Smith, but rather agreed to the court's appointment of Phillips. *Id.* at 3.

Upon the advice of Phillips, Smith accepted the settlement offer. On June 12, 1990, Smith executed an assignment of her breach of contract and bad faith claims against Allstate and her defense counsel.

Allstate attorney Michael Bruno states that, some months after Jerome Phillips was appointed to advise Tracy Smith, Romstadt's counsel appeared at Bruno's office and requested that he sign the agreed entry of judgment in the amount of $125,000 against Tracy Smith. Bruno refused to sign the document, and explained to Romstadt's counsel that, because of the conflict of interest, only Phillips could sign the document on behalf of Tracy Smith. Supplemental Affidavit of Michael A. Bruno at 3. Bruno states that he never approved the terms of the settlement agreement on behalf of either Allstate or Smith. On June 30, 1992, an agreed entry of judgment in the amount of $125,000, signed by Phillips, Romstadt's counsel, and Judge Knepper was entered.

On October 7, 1992, the Romstadts filed their Release and Satisfaction of Judgment, stating that, upon acceptance of breach of contract and bad faith claim against Allstate, and having previously received $25,000 from Allstate in partial payment of the judgment, releases as fully satisfied the judgment against Smith.

Phillips, the attorney for Smith, averred as follows:

> Since the settlement agreement required Kenneth Romstadt to completely release Tracy Smith and to enter a satisfaction of judgment on the record as to the judgment against her, the amount of the judgment in favor of plaintiffs against Tracy Smith was irrelevant and would be of no concern to Tracy Smith or to me in advising Tracy Smith with regard to the settlement proposal. Since the amount of the agreed judgment entry was irrelevant, I made no investigation or determination concerning the value of Mr. Romstadt's claim against Tracy Smith nor whether $125,000 was the reasonable value of plaintiff's claims against Tracy Smith.... As a result of the settlement agreement with the Romstadt's, Tracy Smith was never exposed to an excess judgment against her since the consideration for the agreed entry of judgment and the assignment of her claims was that she would receive a release and satisfaction of judgment.... As a result of the settlement agreement with the Romstadts, Tracy Smith completely insulated herself and her assets from any judgment against her.

Phillips Affidavit at 2–3.

Romstadt, as assignee of Tracy Smith, has now filed a claim for bad faith against Allstate, seeking judgment in the amount of two hundred thousand dollars compensatory damages, and two million dollars punitive damages. Both Romstadt and Allstate have filed motions for summary judgment.

## II. *SUMMARY JUDGMENT STANDARD*

■ It is well established that when considering a motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *United States v. Hodges X-Ray, Inc.,* 759 F.2d 557 (6th Cir.1985); *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir.1974); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425 (6th Cir.1962). However, the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e). The "adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his] response, by affidavits or otherwise . . ., must set forth specific facts showing there is a genuine issue for trial. If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed.R.Civ.P. 56(e).

A court may grant summary judgment only if there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)). Therefore, "[i]f the evidence is merely colorable, . . ., or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citing *Dombrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) (per curiam); *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. at 290, 88 S.Ct. at 1593)). " 'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which

the jury could reasonably find for the plaintiff.' " *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1477 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512)). Moreover, summary judgment is appropriate when the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511.

## III. *LAW AND DISCUSSION*

■ Romstadt argues that Allstate, in bad faith, failed to settle for the policy limits, thereby exposing its insured to an excess judgment; and that, in bad faith, Allstate failed to defend Smith. Romstadt claims that the medical reports that Allstate had obtained prior to the October 1, 1990 settlement offer of $25,000 established that Romstadt's injuries were a result of the December 20, 1989 accident, and that Allstate did not conduct an independent medical exam because they believed that they had all the information they needed. Yet, Romstadt contends, Allstate had no medical or nursing opinion that Romstadt's prior conditions were even relevant to the present injury. Further, Romstadt claims that Allstate knew that, if Romstadt's injuries were linked to the December 20, 1989 accident, then the claim against Tracy Smith was an excess liability claim. Nonetheless, Allstate did not advise Smith of the October 1, 1990 offer to settle for the policy limits.

Allstate presents essentially two arguments in defense. First, it argues that Smith was not exposed to an excess judgment. Second, it argues that it did not act in bad faith in rejecting the settlement offer of

$25,000. Because, as discussed below, the first of these arguments is persuasive, it is unnecessary for this Court to reach the question of whether Allstate did act in bad faith.

With respect to Allstate's first argument, Allstate argues that it is axiomatic that the essential element of a claim of bad faith against an insurance company arising out of a third-party claim is that a judgment in excess of coverage has been rendered against the insured. Unless the insured has been so exposed to an excess judgment by the unreasonable actions of the insurance company, the insured has no claim for bad faith. ·

Allstate claims that, because Romstadt's claim was never tried to a jury, Smith, its insured, was never exposed to an excess judgment. Instead of trying the case and permitting a jury to determine the value of Romstadt's claim, Romstadt demanded that Allstate's insured enter into an agreed judgment against her and an assignment of her claim for bad faith against Allstate to Romstadt, in exchange for a release and satisfaction of judgment as to any claim against her in excess of the policy limits of $25,000.

Allstate argues that, where there is no objective determination of the value of a claim by a jury, judge, arbitration panel or mediator, but merely an agreed judgment in an amount determined by the injured party, the insured was not exposed to an excess judgment against her, and she has no claim for bad faith. Allstate claims that, in order to constitute an excess judgment giving rise to a claim of bad faith, the insured's personal assets must be exposed to satisfaction of the judgment.

Allstate cites no Ohio case law in support of this argument, and this Court has located no Ohio cases either accepting wherein a party brings a bad faith claim without having first had its damages determined by a judge, jury, mediator or arbitrator. Allstate does, however, cite cases from other states in support of its position that where a stipulated or agreed judgment is accompanied by an agreement not to execute upon the insured's personal assets, the stipulated or agreed judgment cannot serve as the basis of a bad faith claim against the insurance company.

In *Doser v. Middlesex Mutual Ins. Co.*, 101 Cal.App.3d 883, 162 Cal.Rptr. 115 (1980), the insurance company failed to defend its insured and rejected a policy limits settlement demand on a wrongful death claim against Kelly, its insured. The heirs of the decedent entered into an agreement to settle the claim against Kelly's estate for $980,000 and an agreement that in satisfaction of the claim, Kelly's estate would assign its bad faith claim against Middlesex in exchange for a release from personal liability. *Id.* at 888, 162 Cal.Rptr. 115. The Doser heirs then filed a bad faith suit against Middlesex pursuant to the assignment. Middlesex prevailed on the bad faith action and the appellate court affirmed on the basis that no cause of action for bad faith arose until the insured incurred a binding judgment in excess of policy limits. *Id.* at 892, 162 Cal.Rptr. 115. In explaining why the insurance company should not be bound by the settlement agreement, the court stated:

> No judge or jury ever considered the facts of the wrongful death case and came up with an appropriate verdict on which a judgment could be based. No agreement as to damages was ever reached in which a representative of the insurance company participated. . . .
>
> [Counsel for the Doser Heirs] acting virtually alone set the amount of damages, albeit on behalf of his clients and as an expert in the field of aircraft accident litigation. We know of no legal precedent condoning such action, nor do we propose to author an opinion which would become such authority. Such a worthless paper transaction cannot support the Doser Heirs' damage claim in their cause of action against Middlesex.

*Id.* at 893–94, 162 Cal.Rptr. 115. Moreover, the court stated that the "glaring flaw in the Doser Heirs' case against Middlesex is the unprecedented manner in which they arrived at the $980,000 damages figure. They bootstrapped their damages with the ingenious assistance of counsel." *Id.* at 892, 162 Cal. Rptr. 115.

In *Smith v. State Farm Mutual Automobile Ins. Co.*, 5 Cal.App. 4th 1104, 7 Cal. Rptr.2d 131 (1992), the plaintiffs in the un-

derlying action had reached a settlement with the insured wherein the insured stipulated to judgment in the amount of $500,000 and plaintiffs stipulated not to execute against the insured personally. The insured assigned all claims against the insurance company for failure to defend or settle to the plaintiff. The Smiths, as assignees of State Farm's insured, filed suit against State Farm. The court held that a stipulated judgment with a covenant not to execute was not sufficient to meet the requirements of a judgment necessary to assign a bad faith cause of action against an insurer, stating as follows:

> A stipulated judgment with a covenant to execute will not bind the insurer under Civil Code section 2778 subdivision 5, because it does not represent a "recovery against" the insured; the statute plainly refers to the sort of recovery that will trigger a duty to indemnify, that is, a recovery imposing liability. The covenant not to execute shields the insured from such liability. Similarly, the stipulated judgment will not bind the insurer through the doctrine of *res judicata* because the insurer is not a party to the judgment....

*Id.* at 1114, 7 Cal.Rptr.2d 131. The court further stated that it saw no distinction between a stipulated judgment with a covenant not to execute and the settlement entered into in *Doser*. Thus, the court found that the insurance company could not be bound by the amount of damages in the stipulated judgment which had not been litigated. *Id.* at 1115–16, 7 Cal.Rptr.2d 131.

Allstate urges this Court to follow the cases discussed above, and hold that there is no bad faith claim in this case because no judge or jury determined the amount of damages. Further, Allstate contends, because of the assignment and the release from judgment, Smith, the insured, was never exposed to excess liability, and Romstadt cannot maintain a bad faith claim.

■ Romstadt's response to this argument is, first, that Allstate's attorney, Bruno, selected Phillips to be Smith's independent counsel, and that Allstate never interposed any objection to the settlement. However, Romstadt has presented no evidence to suggest that Bruno did anything more than agree when Judge Knepper suggested the appointment of Phillips. Moreover, plaintiff has cited no legal authority that Allstate can be bound by the agreed entry of judgment merely because it failed to object to it. Allstate was not a party to the agreement and was not in a position to object to the agreement. It is not disputed that Bruno advised Romstadt's counsel that, because of the conflict of interest, he could not sign the agreed entry of judgment on behalf of either Allstate or Smith. Romstadt's response to Allstate's arguments as summarized above simply do not refute the argument Allstate makes that Smith was never exposed to excess liability and that, because no impartial tribunal determined the amount of damages, there is no judgment for purposes of a bad faith claim.[1]

■ This Court is, therefore, faced with an issue of first impression in Ohio law. In diversity cases where the state's highest court has not spoken, a federal court must attempt to predict how the state would act in the future. *Hines v. Joy Mfg. Co.,* 850 F.2d 1146 (6th Cir.1988).

This Court finds, and believes that the Ohio Supreme Court would find, that Allstate's arguments and the rationale presented in the California law cited above are persuasive. To allow this claim for bad faith to proceed to the merits would ·be to allow Romstadt to bootstrap his damages without ever having a judge or a jury determine the amount of those damages. The settlement amount of $125,000 was arrived at by Romstadt's counsel, and proposed as a settlement

---

1. Romstadt also claims that Allstate waived its argument that Smith was not exposed to an excess judgment and that it cannot be bound by the agreed judgment entry because Allstate did not raise the defenses of fraud, collusion, failure to cooperate, and failure of exposure. However, as Allstate points out, it is not arguing that the agreed judgment entry is invalid due to fraud or collusion, but rather that Romstadt's bad faith claim is fatally flawed because an essential element to any claim of bad faith against an insurance company is that the insured was exposed to an excess judgment. Allstate did, in its answer to Romstadt's complaint, plead that Romstadt had failed to state a claim upon which relief can be granted. Accordingly, Allstate's defenses were not waived.

to Smith. Clearly Smith's incentive in this case was to protect herself and her assets; therefore, as Phillips counselled Smith, it was most advantageous for her to agree to the agreed judgment entry of $125,000 against her and assign her bad faith claim against Allstate to Romstadt in exchange for release and satisfaction of any amount of such agreed judgment that remains unpaid by Allstate. Allstate, however, was not a party to the agreed judgment entry, and, because of the conflict present for Bruno, could neither accept or reject the settlement offer. Taken to an extreme, Smith and Romstadt could have agreed to any dollar figure—it did not matter to Smith whether the agreed judgment entry stated that she agreed to judgment in the amount of $125,000 or $1,125,000. The settlement allowed her to walk away with her assets insulated from any liability. As a matter of law, therefore, she was not exposed to excess liability, and plaintiff, as Smith's assignee, cannot maintain a bad faith claim against Allstate.

The policy behind bad faith insurance claims is that an insurance company cannot, in bad faith, refuse to settle and thereby expose its insured to excess liability. To allow the instant claim for bad faith to go forward would be to thwart this policy, and allow injured parties and insured parties to engage in collusion, and to leave the insurance companies to suffer the consequences of the avoidance on the part of the injured party and the insured of a determination by a jury, judge, arbitrator or mediator of the amount of damages the injured party's claim is worth. This Court does not believe that the Ohio Supreme Court would condone such a result.

This Court will, therefore, grant Allstate's motion for summary judgment, and deny Romstadt's motion for summary judgment.

IT IS SO ORDERED.