**Kenneth M. ROMSTADT,**
**Plaintiff–Appellant,**

**v.**

**ALLSTATE INSURANCE COMPANY,**
**Defendant–Appellee.**

No. 94–3326.

United States Court of Appeals,
Sixth Circuit.

Argued March 27, 1995.

Decided July 17, 1995.

George C. Rogers, Rogers, Godbey & Horner, Toledo, OH (argued and briefed), for plaintiff-appellant.

John D. Willey, Jr., Eastman & Smith, Toledo, OH (argued and briefed), for defendant-appellee.

Before: JONES and SILER, Circuit Judges; WISEMAN, District Judge.[*]

NATHANIEL R. JONES, Circuit Judge.

■ Plaintiff Kenneth Romstadt is appealing summary judgment for Defendant Allstate Insurance Company ("Allstate") in this diversity action alleging bad faith denial of an insurance claim. For the reasons that follow, we hold that in order for an injured third party to bring a claim against an insurer for bad faith in failing to settle within policy limits, there must first be an adjudicated excess judgment entered against the insured. We affirm the decision of the district court.

## I. Background

On December 20, 1989, Tracy Smith "rearended" the car Kenneth Romstadt was driving. Ms. Smith was insured by Allstate pursuant to a policy issued to her mother, Rose Chamblee. Smith's car was not damaged; Allstate paid Romstadt's $143.00 repair bill. Subsequently, Romstadt complained of back pain, and in the year after the accident he underwent two disk surgeries.

There is no dispute as to Smith's liability for the accident. The maximum on her policy with Allstate is $25,000.

In September 1990, Romstadt's counsel demanded a settlement from Allstate of $96,000 for Romstadt's lost wages and medical expenses allegedly resulting from the December accident. Allstate rejected the offer because Romstadt's medical reports showed

[*] The Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

that he had a history of chronic back pain as well as a previous, more serious accident in May 1989. Based on these reports Allstate concluded that Romstadt's injuries were not necessarily attributable to the December 1989 accident.

On October 1, 1990, Romstadt's counsel offered to settle for Allstate's policy limit of $25,000, noting that regardless of Romstadt's prior medical history, the aggravation of a pre-existing condition was recoverable. Allstate rejected this offer, but countered with a $2,000 settlement offer. It is undisputed that Allstate did not advise Ms. Smith of Romstadt's $25,000 settlement offer.

On November 27, 1990, Romstadt and his wife filed suit against Smith in Lucas County Common Pleas Court. At one point, Allstate offered its $25,000 policy limit as settlement, but Romstadt rejected this offer. Ultimately, Romstadt offered to settle by having Smith enter into an agreed judgment for $125,000 and an assignment from Smith to Romstadt of all her claims against Allstate in exchange for the Romstadts filing a release and satisfaction of the judgment against Smith. Because of the conflict presented by the demand, Allstate's counsel for Smith, Michael Bruno, advised Smith, the court, and Romstadt that he could not advise or represent Smith with regard to the settlement. The court appointed Jerome Phillips to act as independent counsel for Smith with regard to the settlement offer. On June 12, 1992, upon Phillips' advice, Smith accepted the settlement offer and assigned her claims against Allstate to the Romstadts. On June 30, 1992, the court accepted an agreed entry of judgment in the amount of $125,000, signed by Phillips and Romstadt's counsel. Allstate was not a party to the settlement.

In September 1992, Allstate paid its policy limit of $25,000 to the Romstadts. On October 27, 1992, the Romstadts released the judgment against Smith as fully satisfied. On October 29, 1992 Romstadt, as assignee of Smith, then filed this action against Allstate in the Court of Common Pleas of Lucas County, Ohio against Allstate for alleged breach of its contractual duties and its bad faith in failing to investigate, settle, and defend Ms. Smith. Romstadt sought $200,000

compensatory damages and $2,000,000 punitive damages. Allstate had the case removed to federal court on the basis of diversity jurisdiction. Allstate filed its Answer on December 22, 1992.

On May 14, 1993, Romstadt filed a motion for summary judgment on the bad faith claim. In late June, Allstate moved for summary judgment. On February 23, 1994 United States District Judge David Dowd denied Romstadt's motion and granted Allstate's motion. *Romstadt v. Allstate Ins. Co.*, 844 F.Supp. 361 (N.D.Ohio 1994). Romstadt now appeals to this court.

## II. Discussion

The district court granted summary judgment to Allstate. "We review a district court's grant of summary judgment *de novo*. ... [I]n a motion for summary judgment, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Russo v. City of Cincinnati*, 953 F.2d 1036, 1041–42 (6th Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986), and citing *Vollrath v. Georgia–Pacific Corp.*, 899 F.2d 533, 534 (6th Cir.), *cert. denied*, 498 U.S. 940, 111 S.Ct. 345, 112 L.Ed.2d 310 (1990)). "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir.1990).

### A.

■ Romstadt first argues that pursuant to rules 8(c) and 12(b) of the Federal Rules of Civil Procedure, a defense based upon fraud or collusion is waived if not raised in the first responsive pleading. We find this first argument to be without merit since we hold that Romstadt's bad faith claim fails at the outset, thus precluding any need to determine whether Allstate has waived certain affirmative defenses to that claim. The de-

fense of failure to state a claim upon which relief can be granted is protected from waiver through trial. *See* Fed.R.Civ.P. 12(h)(2).[1]

### B.

■ Romstadt next argues that the district erred in determining that Smith was never exposed to an excess judgment. Romstadt argues that the agreed judgment was not only valid and binding on Allstate, but also exposed Smith to excess liability allowing Romstadt's bad faith claim to go forward. The district court ultimately found that the agreed judgment allowed Smith to "walk away with her assets insulated from any liability." 844 F.Supp. at 367. The court found that as a matter of law Smith was not exposed to excess liability and Romstadt could not maintain a bad faith claim against Allstate. We agree.

■ Currently, under Ohio law, the proper standard to be used to decide whether an insurer has breached its duty to its insured to act in good faith is the "reasonable justification" standard. Under this standard, " 'an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.' " *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397, 399–400 (1994) (quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 525 N.E.2d 783, 788 (1988)).[2] In *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 87 N.E.2d 347 (1949), the Ohio Supreme Court first announced this standard, explaining that in order for a tort action to lie against an insurer for failing or refusing to settle a claim brought against the insured for an amount within the policy limits, *"so as to entitle the insured to recover for the excess of the judgment over the policy limit*[, the insurer]

must have been guilty of fraud or bad faith." 87 N.E.2d at 349 (emphasis added) (internal quotation omitted). Thus, under Ohio law, implicit in bringing an action against an insurer for bad faith with respect to settling a claim within policy limits, is a requirement that there be an excess judgment against the insured. *See id.; Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1320 (1983) (explaining that "[i]n order to recover for the excess liability" insured must show that insurer's refusal to settle was not made in good faith); *cf. Marginian v. Allstate Ins. Co.*, 18 Ohio St.3d 345, 481 N.E.2d 600, 603 (1985) (holding no claim of bad faith could lie where insurer settled claim within policy limits as provided by terms of insurance contract, and noting that cases recognizing bad faith claim were distinguishable in part because "the instant insured has not been exposed to further liability, over and above the limits of his policy").

■ Romstadt argues that the district court should have found Allstate to be bound by the agreed judgment between the Romstadts and Smith because Allstate had an obligation to provide a defense for Smith and to control settlement of the case, and Allstate did not meet these obligations. *See* Romstadt Br. at 8–9. Romstadt declares that

> "[t]here is an either/or situation here. Either Allstate agreed to Jerome Phillips as defense counsel and therefore agreed to the settlement that he agreed to as part of the Allstate-provided defense (regardless of Mr. Phillip's [sic] reasons for advising such settlement). Or Allstate abandoned its right to control the defense, without making any objection to the defense counsels' action, by maintaining silence when it had a duty and opportunity to speak."

*Id.* at 8. Romstadt further argues that "[t]he very fact of the entry of judgment

---

1. Specifically, Federal Rule of Civil Procedure 12(h)(2) states that "[a] defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P. 12(h)(2). As the district court correctly determined, Allstate properly raised the defense in its Answer. *See Romstadt*, 844 F.Supp. at 366 n. 1.

2. The Ohio Supreme Court, in reaffirming this "reasonable justification" standard in *Zoppo*, expressly overruled its decisions in *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992) and *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 187 N.E.2d 45 (1962) insofar as those holdings required that intent was an element of the tort of bad faith.

itself [against Smith] constitutes damage and harm sufficient to permit recovery." *Id.* at 9. We do not find these arguments to be convincing.

Allstate neither agreed to the consent judgment, nor abandoned its defense of Smith as its insured. We hold that Allstate was not a party to the agreement, and thus not bound to the judgment. *See Xebec Dev. Partners, Ltd., v. National Union Fire Ins. Co.,* 12 Cal.App.4th 501, 544, 15 Cal.Rptr.2d 726 (1993) ("Where the insurer did not join in the stipulation, a judgment based on the stipulation may be entitled to presumptive weight but should bind the insurer only to the extent it represents a *true independent adjudication* of the insured's liability.... [J]udgments based on stipulations in which the insurer did not join should not be regarded as binding adjudications of the insurer's interests, and ... this should particularly be so where the stipulation was given for a covenant not to execute.") (emphasis added); *Wright v. Fireman's Fund Ins. Cos.,* 11 Cal. App.4th 998, 1002–03, 14 Cal.Rptr.2d 588 (1992) (insurer may not be bound by stipulated judgment with covenant not to execute entered against its insured where insurer did not consent or participate in judgment). Furthermore, although Bruno withdrew as Smith's counsel with regard to the proposed settlement due to the clear conflict of interest inherent in the proposed settlement, he never withdrew as Smith's counsel for trial or other settlement purposes. In other words, Allstate never refused to *defend* Smith in this case.

Nevertheless, Romstadt argues that cases which hold that an insured may seek a reasonable settlement where the insurer has refused to defend the insured compel the court to enforce the agreed judgment in this case. We disagree.

In support of his argument, Romstadt appropriately cites *Steil v. Florida Physicians' Ins. Reciprocal,* 448 So.2d 589 (Fla.Dist.Ct. App.1984), in which the Florida court was faced with a situation analogous to the instant case. In *Steil,* the injured plaintiff had settled her malpractice claims against the defendant doctor by acquiring an assignment of his rights against his insurance carrier and then discharging the doctor from liability. She then attempted to assert her right to recover the settlement figure from the insurance carrier which had previously denied coverage to, and thus refused to provide a defense for, the doctor. 448 So.2d at 590. The court noted initially that "the general rule that if an insurer wrongfully refuses to defend, an insured is entitled to make a reasonable settlement without requiring the suit to be carried to judgment even though the policy purports to avoid liability for a settlement made without the insurer's consent," and that "[b]y refusing to defend Steil's claim, the carrier left [defendant doctor] to his own devices to protect himself in the best way possible." *Id.* at 591. The court then declared the following:

> The real concern in this type of case is that the settlement between the claimant and the insured may not actually represent an arm's length determination of the worth of the plaintiff's claim. In a situation where the insured actually pays for the settlement of the claims against him or where the case is fully litigated at trial before the entry of a judgment, the amount of the settlement or judgment can be assumed to be realistic. Therefore, if the insurer is later determined to have wrongfully refused to defend and the claim is within the coverage, it will be obligated to pay the amount of the settlement or judgment, at least within its policy limits, in the absence of a showing of collusion or fraud.

> However, in the instant case or one involving a consent judgment with a covenant not to execute, the settlement figure is more suspect. The conduct of an insured can hardly be characterized as fraudulent simply because he stipulates to a large settlement figure in order to obtain his release from liability. He has little or nothing to lose because he will never be obligated to pay. As a consequence, the settlement of liability and damages may have very little relationship to the strength of the plaintiff's claim. Due to this problem, the ordinary standard of collusion or fraud is inappropriate. Thus, we hold that in a case such as this, a settlement may not be enforced against the carrier if it is

unreasonable in amount or tainted by bad faith. Moreover, because the circumstances surrounding the settlement will be better known to the party seeking to enforce it, he should assume the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier.

*Id.* at 592 (citations omitted).

■ While we agree with much of the Florida court's reasoning, we ultimately find it inapplicable to the instant case. We find *Steil* to be inapposite because the settlement in *Steil* was due primarily to the insurer's refusal to *defend* the insured at all, and not, as in the instant case, because of a failure on the part of the insurer to *settle* a case it was otherwise defending. We find that a distinction between the insurer's duty to defend and the insurer's duty to settle within policy limits is appropriate because the duty to defend is usually absolute, *see, e.g., City of Willoughby Hills v. Cincinnati Ins. Co.,* 9 Ohio St.3d 177, 459 N.E.2d 555, 558 (1984) ("where the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim"),[3] while the duty to settle is generally more discretionary, *see Netzley v. Nationwide Mut. Ins. Co.,* 34 Ohio App.2d 65, 296 N.E.2d 550, 559 (1971) (there is duty to settle where "there is reason to believe that the claim against the[ ] insured is a meritorious one, and where the reasonable expectation of successfully defending the action is negligible"); *see also Fireman's Fund*

*Ins. Co. v. Mitchell–Peterson, Inc.,* 63 Ohio App.3d 319, 578 N.E.2d 851, 859 (1989) ("Evidence of facts indicating that an insurer refuses to settle within policy limits is not, in itself, conclusive of the insurer's bad faith"), *jurisdictional motion overruled,* 46 Ohio St.3d 711, 546 N.E.2d 946 (1989). A determination as to whether or not an insurer has appropriately exercised its discretion to settle should not be made *in medias res.*[4]

■ Consequently, we find that a recent decision of the Ohio Supreme Court, *Sanderson v. Ohio Edison Co.,* 69 Ohio St.3d 582, 635 N.E.2d 19 (1994), in which the court held that the insurer breached its duty to defend the insureds, does not control this case. In *Sanderson,* the court held that the insurer's breach of its duty to defend relieved the insureds of their duty to seek assent from the insurer to settlement with the injured third party. The Ohio Supreme Court stated the following:

> [W]here an insurer unjustifiably refuses to defend an action, leaving the insureds to fend for themselves, the insureds are at liberty to make a reasonable settlement without prejudice to their rights under the contract. By abandoning the insureds to their own devices in resolving the suit, the insurer voluntarily forgoes the right to control the litigation and, consequently, will not be heard to complain concerning the resolution of the action in the absence of a showing of fraud, even if liability is conceded by the insureds as a part of settlement negotiations.

*Id.* at 23–24. In the instant case there is simply no evidence that Allstate abandoned Smith or otherwise refused to defend her when it failed to reach a settlement with Romstadt. Where the insurer did not refuse

---

**3.** The Ohio Supreme Court has narrowed this holding to instances "[w]here the insurer represents to its insured that it will undertake the defense of any claim asserting injury within coverage, even where the claim is false or fraudulent." *See Preferred Risk Ins. Co. v. Gill,* 30 Ohio St.3d 108, 507 N.E.2d 1118, 1124 (1987).

**4.** In so holding, we disagree with a recent statement of the California Court of Appeals:

> [T]here is no explicit requirement for bad faith liability that an excess judgment is actual-

ly suffered by the insured, since the reasonableness analysis of settlement decisions is performed in terms of the probability or risk that such a judgment may be forthcoming in the future.

*Camelot by the Bay Condominium Owners' Ass'n v. Scottsdale Ins. Co.,* 27 Cal.App.4th 33, 48–49, 32 Cal.Rptr.2d 354 (1994). We see no reason to encourage the type of settlement at issue in the instant case.

to defend its insured, we hold that the rule in *Sanderson* does not apply.

Romstadt also argues that Smith was exposed to excess liability because the agreed judgment remained unsatisfied for over 30 days until Romstadt accepted the assignment of Smith's claims, and thus Smith was subjected to an excess judgment on her credit rating. Romstadt Br. at 9. Romstadt points to *Carter v. Pioneer Mut. Cas. Co.*, 67 Ohio St.2d 146, 423 N.E.2d 188 (1981). We also find *Carter* to be distinguishable from the instant case. In *Carter*, the Carters brought suit against the insolvent estate of the deceased insured for the deceased's negligent operation of his automobile. The insurer refused an offer to settle the case within the policy limits on behalf of the estate and the case went to trial, resulting in a verdict in excess of the policy for the Carters. The insurer paid its policy limit to the Carters, leaving the estate to pay the remainder of the excess judgment. The administratrix of the estate assigned the estate's rights against the insurer to the Carters, and thereafter the Carters filed a claim of bad faith in failing to settle the negligence suit against the insurer. The trial court found that the insurer had acted in bad faith as a matter of law, and after trial on the issue of damages, the Carters were awarded damages. The Court of Appeals reversed the trial court on the rationale that an excess judgment may not be recovered by an insolvent estate because an insolvent estate can not be damaged. 423 N.E.2d at 190. The Ohio Supreme Court reversed. The court adopted the "judgment rule" that "entry of judgment in excess alone is sufficient damage to sustain a recovery from an insurer for its breach of duty to act in good faith in defending the insured's case." *Id.* at 190. In so holding, the court explicitly rejected the "payment rule" espoused by a minority of jurisdictions which reasoned that an insured who does not or can not partially or fully satisfy an excess judgment is not harmed by the judgment and thus the insurer need not be held responsible for bad faith in defending that insured. *See* 423 N.E.2d at 191.

In *Carter*, however, the entry of excess judgment at issue was due to a *trial verdict* against the insured, and the issue before the court was whether the adjudicated excess judgment could be recovered from the insurer by an insolvent estate, which seemingly could not be damaged by such a judgment. The Ohio Supreme Court held that such an excess judgment could be recovered by the insolvent estate because "[a] living insured with no assets suffers injury when an excess judgment is obtained against him because such a judgment will potentially impair his credit, place a cloud on the title to his exempt estate, impair his ability to successfully apply for loans, diminish his reputation and future prospects and the like." *Id.* at 191. The rationale behind this rule is to discourage an insurer from unreasonably refusing to settle simply because it knows that its insolvent insured will not be able to pay an excess judgment. *Id.* To apply the rule in the context of this case, however, does not serve this rationale. Instead, it would encourage injured third parties to unreasonably refuse to settle within the policy limits. In the instant case, Smith was simply not at risk for the financial injuries described in *Carter*. The whole point of Smith's entry into the agreement was to insulate herself from any personal financial liability.

## C.

■ Romstadt next argues that the district court erred in determining that Ohio courts would find that the agreed judgment here would not support a claim of bad faith against Allstate. In deciding this case, the district court was required to predict how the Ohio Supreme Court would speak on this issue, since that court has not yet done so. *See* 844 F.Supp. at 366 (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146 (6th Cir.1988)). The court ultimately held the following:

> The policy behind bad faith insurance claims is that an insurance company cannot in bad faith, refuse to settle and thereby expose its insured to excess liability. To allow the instant claim for bad faith to go forward would be to thwart this policy, and allow injured parties and insured parties to engage in collusion, and to leave the insurance companies to suffer the consequences of the avoidance on the part of the injured

party and the insured of a determination by a jury, judge, arbitrator or mediator of the amount of damages the injured party's claim is worth. This Court does not believe that the Ohio Supreme Court would condone such a result.

844 F.Supp. at 367. In reaching this decision the district court relied primarily on two California Court of Appeals' cases: *Doser v. Middlesex Mut. Ins. Co.*, 101 Cal.App.3d 883, 893–94, 162 Cal.Rptr. 115 (1980) and *Smith v. State Farm Mut. Auto. Ins. Co.*, 5 Cal. App.4th 1104, 1114, 7 Cal.Rptr.2d 131 (1992). *See* 844 F.Supp. at 365–66. The district court adopted the rationale of these two cases as the rationale it believed the Ohio Supreme Court would use if it were to speak on the issue. We agree.

First, as we have already noted, application of the Ohio Supreme Court's decisions in *Sanderson* and *Carter*, as urged by Romstadt, to this case would offend the rationales underlying those decisions. Second, Ohio authority indicates that an agreed judgment should not be enforceable against an insurer where an excess liability has not been *adjudicated.* In *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295 (1973) an injured person filed suit directly against the alleged wrongdoer's liability insurer. The Court of Appeals held that an injured person may only sue the tortfeasor's insurer after obtaining a judgment against the tortfeasor. One of the arguments Chitlik raised was that because the insurer had settled a property damage claim arising from the car accident with its insured, the insurer had admitted liability and thus should allow Chitlik to sue the insurer directly for the injuries to his person. In rejecting this argument, the court stated the following:

> When a person against whom a claim is brought makes a settlement with the claimant, such person does not thereby acknowledge liability. *Hillyer v. City of East Cleveland* (1951), 155 Ohio St. 552, 99 N.E.2d 772. Further, even if Allstate's settlement were an admission of liability, *the value of the injuries suffered by appellant would still need to be determined in an action against the alleged tortfeasor.*

*Id.* at 299 (emphasis added). Additionally, in a case in which a third party brought a claim against an insurer alleging that it had unreasonably refused to settle a suit pending between its insured and the third party, the Ohio Court of Appeals declared the following:

> Ohio recognizes a duty incumbent upon insurance companies to act in good faith in settling claims, but this duty runs only from the insurer to the insured, not to third parties. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 452 N.E.2d 1315. Any claims of bad faith negotiations by third-party claimants cannot be based on speculation, but must arise from *adjudicated* liability. *Chitlik, supra.*

*D.H. Overmyer Telecasting Co. v. American Home Assurance Co.*, 29 Ohio App.3d 31, 502 N.E.2d 694, 698 (1986) (emphasis added).

Based on the foregoing, we hold that under Ohio law, where the insurer has not refused to *defend* the insured, but has only refused to *settle* the case, an injured third party cannot sue the insurer directly, or via assignment, for bad faith refusal to settle in the absence of an *adjudicated* excess judgment against the insured.

## D.

Romstadt next argues that the district court erred in denying his motion for summary judgment. This court reviews a district court's decision to *deny* a motion for summary judgment for an abuse of discretion. *Southward v. South Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993); *Pinney Dock & Trans. Co. v. Penn Central Corp.*, 838 F.2d 1445, 1472 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *Southward*, 7 F.3d at 492. " 'A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses and erroneous legal standard.' " *Id.* (citation omitted).

We find that the district court did not abuse its discretion in denying Romstadt's motion for summary judgment. Even if the district court had found it necessary to

reach the bad faith issue, under Ohio law whether Allstate had acted in bad faith in refusing to settle was an issue of fact for a jury to decide, as there was evidence that Allstate's refusal to settle was reasonable. *See Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 87 N.E.2d 347, 350 (1949) (holding that there was evidence of lack of good faith on part of insurance company sufficient for allowing issue to go to jury); *Netzley v. Nationwide Mut. Ins. Co.*, 34 Ohio App.2d 65, 296 N.E.2d 550, 559 (1971) (stating that question of good faith is fact issue for jury).

### E.

■ Finally Romstadt argues that the district court erred in determining that Smith suffered no damages as a matter of law. The district court did not address whether Smith had suffered damages, other than implicitly in its determination that Smith had not been exposed to excess liability as a matter of law. Assuming that Romstadt is arguing that this is a factual determination that the district court erroneously determined as a matter of law, we hold that the district court did not err in determining that where there is a consent agreement which anticipates and is followed by a satisfaction and release of judgment for the party against whom the judgment was entered, then that party has not been exposed to excess liability triggering a claim of bad faith against the insurer as a matter of law. *See Doser,* 101 Cal.App.3d at 893–94, 162 Cal.Rptr. 115; *Smith,* 5 Cal.App.4th at 1114, 7 Cal.Rptr.2d 131.

### III. Conclusion

Based on the foregoing, we affirm the careful and comprehensive decision of the district court.