NATIONAL LABOR RELATIONS
BOARD, Plaintiff–Appellant,

v.

MIDLAND DAILY NEWS,
Defendant–Appellee.

No. 97–1544.

United States Court of Appeals,
Sixth Circuit.

Argued June 9, 1998.

Decided July 16, 1998.

Paul A. Ades (argued and briefed), National Labor Relations Board, Office of General Counsel, Washington, D.C., Eric G. Moskowitz (briefed), Margery E. Lieber (briefed), National Labor Relations Board, Special Litigation Branch, Washington, D.C., for Plaintiff–Appellant.

R. Drummond Black (argued and briefed), Riecker, VanDam, Barker, Black & Zuber, Midland, Michigan, for Defendant–Appellee.

Before: KRUPANSKY, NORRIS, and COLE, Circuit Judges.

KRUPANSKY, Circuit Judge.

The National Labor Relations Board ("the Board") has appealed from a district court's denial of its request to order the Midland Daily News ("Midland"), a general circulation newspaper published in Midland, Michigan, to comply with a subpoena duces tecum. The subpoena sought the production of documents that identified the source of an "anonymous" advertisement in the newspaper's

classified pages. The Board has alleged that two errors infected the district court's decision: (1) the court abused its discretion by considering Midland's objections to the subpoena, because Midland had previously failed to file such objections with the Board within the time provided by Congress; and (2) the district court erred as a matter of law by resolving that the proposed enforcement of the subpoena constituted an attempt by the Board to regulate the commercial speech of both the newspaper and its anonymous advertiser, and would effect an overbroad intrusion on their First Amendment rights.

On June 30, 1996, the following advertisement appeared in Midland's classified section:

ELECTRICIANS:

Journeyman, apprentice, full time. Out-of-town work may be required. Send resume to Box "L", Midland Daily News, Midland, MI 48640.

Mark A. Baur ("Baur") responded to the notice on the following day by hand-delivering a copy of his resume and a cover letter to an unidentified Midland employee. Both documents referenced Baur's affiliation with the International Brotherhood of Electrical Workers, AFL–CIO ("the Union"). The next day, Robert Calkins ("Calkins") responded to the same classified publication, also by hand-delivering a copy of his resume to an unidentified Midland employee. His application also purportedly indicated affiliation with the Union. Although both Baur and Calkins questioned the Midland representative about the identity of the "Box 'L'" advertiser, Midland's employees refused to disclose the name.

After only three days had passed without a response from the advertiser, on July 5, 1996, the Union filed an unfair labor practice charge against the advertiser.[1] Lacking any factual support for doing so, the Union speculated that the advertiser had "interfered with, restrained and coerced, and ... discriminated against job applicants/perspective [sic] employees by failing to consider and/or

hire applicants because of their union membership and activities." J.A. at 12. The Board, without further inquiry or investigation to credit the spurious complaint, contacted Midland to determine the identity of the anonymous advertiser. Pursuant to its established practice, the newspaper refused to comply. Accordingly, on July 15, 1996, the Board, without further factual confirmation of a labor violation, issued an investigatory subpoena duces tecum to "Midland's Keeper of Records." J.A. at 15. The subpoena ordered the production of documents that would identify the advertiser, including all orders, billing notices, receipts, and other payment records directly relating to the advertisement. Midland elected to ignore the subpoena as an unconstitutional infringement of its right of free commercial speech and deemed it an *ultra vires* act lacking jurisdictional authority.

On September 27, 1996, the Board filed an application in federal district court seeking an order to mandate Midland's compliance with the subpoena. Following oral argument conducted on November 18, 1996, the district court rejected the Board's application, explaining:

> The Court has read the pleading and memoranda submitted by the parties, has heard arguments of Counsel and concludes that the requested Subpoena is an unnecessary intrusion upon the First Amendment rights to commercial speech of both the Respondent newspaper and its advertiser. The Court further concludes that the Applicant has failed to demonstrate that it cannot pursue its investigation in a less intrusive manner.

J.A. at 75.

The Board filed a motion for reconsideration on January 10, 1997. In addition to seeking reconsideration of the constitutional issue, the Board argued—as it had in its application for enforcement—that Midland had previously waived its First Amendment defense by failing to file either objections or a petition to revoke the subpoena with the

---

1. Although the record indicates that the Union filed the complaint on July 5, 1996, the date next to the signature of the Union representative making the charge indicates that he prepared it on

July 3, 1996—just one day after Calkins delivered the second application to Midland. *See* J.A. at 12.

Board. Although the responsive order did not address the waiver issue, it elaborated upon the court's constitutional analysis: .

> [T]he enforcement effort constitutes an attempt to regulate the commercial speech of both the newspaper and the advertiser. The Court ... finds that such speech may be regulated only in the interest of a substantial government interest and may not be a more extensive intrusion than is necessary under the circumstances. The Court further finds that the Board's request is a blanket sweep far beyond what is necessary and is far more intrusive than is necessary to the rights of both the newspaper and advertiser.

J.A. at 77.

■ An appellate court's authority to disturb a district court's refusal to require a party to exhaust its administrative remedies before invoking the jurisdiction of a federal court exists only if the initial forum abused its discretion. *See Costantino v. TRW, Inc.,* 13 F.3d 969, 974 (6th Cir.1994). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Romstadt v. Allstate Ins. Co.,* 59 F.3d 608, 615 (6th Cir.1995).

■ In the instant case, the Board has alleged that Midland's failure to exercise its right to challenge the Board's subpoena within the five-day time period provided by Congress effected a waiver of that right. *See* 29 U.S.C. § 161(1); *see also* 29 C.F.R. § 1601.16(b)(1). Midland has countered the Board's argument by distinguishing this circuit's decision in *SEC v. WACO Financial, Inc.,* 751 F.2d 831 (6th Cir.1985), where this court confronted a "due process based collateral attack by the defendants in an enforcement action brought by the S.E.C." *Southern Ohio Coal Co. v. Secretary of Labor,* 781 F.2d 57, 57 (1986) (order) (discussing the significance of *WACO Financial*), *amending on denial of reh'g,* 774 F.2d 693 (6th Cir.1985). In those actions, this court recognized the Board's broad authority to pursue discovery in controversies that seek merely to test the operational application of an administrative agency's statutory authority, as in the instant case, and conditioned federal court challenges of that subpoena power upon exhaustion of administrative remedies. *See WACO Financial,* 751 F.2d at 834. In the instant case, however, Midland has charged that the Board's action extended beyond merely seeking to test the operational application of its statutory authority in pursuing discovery, because the Board's subpoena constituted a constitutional infringement of Midland's right to exercise commercial free speech. Accordingly, the district court correctly exercised its discretion to address Midland's constitutional defense despite its election not to present that issue to the Board. *See Costantino,* 13 F.3d at 975 (noting that where a party seeks to challenge the constitutionality of an administrative "provision" it is "properly dealt with in federal court").

■ In *Central Hudson Gas v. Public Serv. Comm'n of NY,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court examined the panoply afforded to commercial expression by the First Amendment. The Court explained that "[t]he First Amendment ... protects commercial speech from *unwarranted* governmental regulation." *Id.* at 561, 100 S.Ct. 2343 (emphasis added). Although the Court observed that "[t]he Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression,"[2] it explained that a governmental entity seeking to impose or employ such a regulation on otherwise accurate and lawful commercial expression "must assert a substantial interest to be achieved by restrictions on commercial speech" if it intends the constraint to withstand constitutional scrutiny. *Id.* at 562–64, 100 S.Ct. 2343.

To elucidate this standard, the Court articulated a four-pronged test:

---

**2.** Speech advancing commercial transactions falls within an ambit that is "traditionally subject to government regulation." *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). Accordingly, the Court has previously resolved that "requir[ing] a parity of constitutional protection for commercial and noncommercial speech alike could invite dilution, simply by a leveling process, of the force of the Amendment's guarantee with respect to the latter kind of speech." *Id.*

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Id.* at 566, 100 S.Ct. 2343.

In the present controversy, there is no dispute that the advertisement placed by an advertiser who desired anonymity and published by Midland was lawful commercial speech. Despite that concession, the Board has insisted that its subpoena to force Midland to disclose source business information was required to develop evidence for the Union to support its speculative charges against the advertiser. The Board has not denied that its proposed action, pursued to benefit the Union, may discourage anonymous employment advertisements generally and thereby chill the lawful commercial speech of periodicals and employers nationwide.

Indeed, if this court permitted the Board to obtain the identity of Midland's advertiser, without demonstrating a reasonable basis for seeking such information, the chilling effect on the ability of every newspaper and periodical to publish lawful advertisements would clearly violate the Constitution. *Cf. id.* at 565, 100 S.Ct. 2343 ("The State cannot regulate speech that poses no danger to the asserted state interest, nor can it completely suppress information when narrower restrictions on expression would serve its interest as well."). As the Court has explained in a slightly different context, "[T]he suppression of advertising reduces the information available for consumer decisions and thereby defeats the purpose of the First Amendment." *Id.* at 567, 100 S.Ct. 2343. Similarly, the suppression of employment advertising by anonymous sources would curtail available employment opportunities by reducing the free flow of information in the labor market.

The Board has failed to convincingly persuade this court that the exercise of the subpoena power in this instance is the least extensive means by which the Board could reasonably expect to proceed, without unnecessarily burdening Midland's constitutional right to free expression.[3] The Board has urged this court to adopt some constitutional leniency because it purportedly lacks the personnel and resources necessary to conduct investigations which intrude less on the commercial speech rights of anonymous advertisers and their publishers. Yet the organizational structure and congressionally authorized funding level of the Board does not alter the text or the decisional law interpreting the Constitution.

Because the Board exceeded its constitutional authority of subpoena after being presented with speculations of discrimination voiced only three days after the complainants had filed their applications, absent any factual support for its action, and before it had developed or implemented a less intrusive means to conduct its investigation, it has facially failed to demonstrate a substantial state interest which outweighs the danger to the free speech rights of Midland, its anonymous advertiser, and the countless similarly situated entities across the nation. Accordingly, the judgment of the district court is **AFFIRMED.**

---

**3.** The Board has relied heavily upon *EEOC v. Shell Oil Co.*, 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), to support the position that it enjoys absolute authority to "insist that [one] disgorge any evidence relevant to the allegations of discrimination contained in the charge, regardless of the strength of evidentiary foundation for those allegations." *Id.* at 72, 104 S.Ct. 1621 (interpreting 29 U.S.C. § 161 in the equal employment opportunity context). That citation is inapposite to the case at bar because it confronted no allegations of the Board's infringement of the constitutional right to free speech of its targets, and the subpoena at issue in that case accordingly presented no danger of chilling lawful and protected conduct.